244 P.3d 965 (2010)
STATE of Washington, Respondent,
v.
Lindy E. DEER, Appellant.
No. 63737-1-I.
Court of Appeals of Washington, Division 1.
December 13, 2010.
Lila J. Silverstein, Washington Appellate Project, Seattle, WA, for Appellant.
Andrea R. Vitalich, King County Prosecutor's Office, Seattle, WA, for Respondent.
*966 DWYER, C.J.
¶ 1 Except in limited circumstances, a criminal charge may not be amended after the State has rested its case. Here, the trial court permitted the State, after resting its case, to amend the information charging Lindy Deer with rape of a child in the third degree. Neither circumstance in which such an amendment is permitted was extant. Accordingly, we reverse and remand with instructions to dismiss the case without prejudice.
¶ 2 Because the issue is likely to recur if the State refiles the charges, we choose to address Deer's contention that the jury instructions given by the trial court relieved the State of its burden of proving beyond a reasonable doubt all elements of the crimes charged, including the implied element of a volitional act. We conclude that the instructions given did, indeed, suffer from this deficiency.

I
¶ 3 In the spring of 2006, just before his fifteenth birthday, R.R. visited family in Washington. He decided to stay to attend boarding school that fall. At the time, Lindy Deer worked as an administrative assistant for R.R.'s great aunt, Valerie Cox, through whom Deer and R.R. met. Deer was 52 years old.
¶ 4 Deer told Cox that she felt "motherly" toward R.R. and that she enjoyed doing things for him because she did not have children of her own. Deer at times took R.R. shopping for clothes and other essentials. Deer was also approved to check R.R. out of the boarding school for overnight visits.
¶ 5 During the summer of 2006, R.R. helped Deer with chores at her home, including helping her to move into a new home and to prepare for a housewarming party. R.R. testified that, on one occasion, while he was doing yard work for Deer, Deer told him that he should have "kissing lessons." Report of Proceedings (RP) (Feb. 11, 2009, Vol. 1) at 25. He further testified that he and Deer kissed multiple times that day. According to R.R.'s testimony, Deer told R.R. that she would "be okay with" having a sexual relationship with him "if it wasn't wrong in the eyes of society." RP (Feb. 11, 2009, Vol. 1) at 39.
¶ 6 Multiple sexual encounters occurred between Deer and R.R. from the fall of 2006 through the spring of 2007. On the first occasion, R.R. was staying the night at Deer's home. That night, R.R. left the couch, where he was planning to sleep, and got into bed with Deer, who appeared to be sleeping. R.R. placed Deer's hand on his penis. R.R. testified that Deer grabbed his penis and pulled him closer. He further testified that she inserted his penis into her vagina and started moving up and down and moaning. Deer testified at trial that she was asleep during the incident.
¶ 7 Another sexual encounter occurred between Deer and R.R. in November 2006. On that occasion, Deer was comforting R.R., whose girlfriend had just broken up with him. Deer and R.R. were lying on the couch and kissing. Deer then performed oral sex on R.R. Deer testified at trial that she did not willingly participate in the oral sex. R.R. testified that he again got into bed and had sexual intercourse with Deer that night.
¶ 8 According to R.R.'s testimony, at least two additional sexual encounters occurred between Deer and R.R. as to which Deer does not contend that she was asleep. On one occasion, R.R. went into the bathroom where Deer was changing her clothes. The two kissed, took off their clothes, and went into Deer's bedroom, where they had sexual intercourse. Deer testified that this intercourse was forced by R.R. R.R. testified that another incident occurred at Cox's home, where Deer and R.R. had sexual intercourse in Cox's laundry room.
¶ 9 Deer was initially charged by information with one count of rape of a child in the third degree. The State later amended the information to add two additional counts of the same crime. Subsequently, the State amended the information again to conform the charging period to R.R.'s testimony. Both the first and second amended information contained erroneous charging language, alleging that Deer had "sexual contact" with R.R. rather than "sexual intercourse," while *967 still identifying the crime charged as rape of a child in the third degree.[1] Thus, while the State intended to charge Deer with rape of a child in the third degree, the information instead listed the elements of child molestation in the third degree. Over the objection of defense counsel, and after the State rested its case, the trial court permitted the State to correct the error by again amending the information.
¶ 10 Due to Deer's contention that she was asleep during at least one of the sexual encounters, Deer and the State proposed a jury instruction that would have required the State to prove beyond a reasonable doubt that she committed a "volitional" act. In a pretrial hearing, the trial court informed the parties that, in the event that it decided to give this instruction, the "volitional argument" would apply only to the allegations of sexual encounters as to which Deer contended that she was asleep. The trial court later determined not to give the proposed instruction and instead gave the jury an instruction stating:
It is a defense to the charge of Rape of a Child in the Third Degree that the child had intercourse with the defendant without the knowledge or consent of the defendant.
The defendant has the burden of proving this defense by a preponderance of the evidence.
Clerk's Papers (CP) at 24.
¶ 11 The jury found Deer guilty of three counts of rape of a child in the third degree.
¶ 12 Deer appeals.

II
¶ 13 Deer first contends that the trial court erred by allowing the State to amend a constitutionally defective information after the State rested its case. The State concedes that this ruling was erroneous. We agree.
¶ 14 "A criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense." State v. Pelkey, 109 Wash.2d 484, 491, 745 P.2d 854 (1987). The first and second amended information in this case failed to set forth the essential elements of the crime chargedrape of a child in the third degree.[2] Although both charging documents cited to the statute defining the crime of rape of a child in the third degree, RCW 9A.44.079, the documents listed the elements of child molestation in the third degree.[3]See State v. Vangerpen, 125 Wash.2d 782, 787, 888 P.2d 1177 (1995) (noting that "[m]erely citing to the proper statute and naming the offense is insufficient to charge a crime unless the name of the offense apprises the defendant of all of the essential elements of the crime"). Thus, the charging documents erroneously included the element of "sexual contact" and failed to include the element of "sexual intercourse" that is essential to a rape charge.[4]
¶ 15 Because "`[t]he proper remedy [in such a case] is dismissal without prejudice to *968 the State refiling the information,'" Vangerpen, 125 Wash.2d at 793, 888 P.2d 1177 (quoting State v. Simon, 120 Wash.2d 196, 199, 840 P.2d 172 (1992)), we reverse the trial court's judgment and remand with instructions to dismiss the case without prejudice.

III
¶ 16 Deer further contends that her right to due process was violated where the trial court instructed the jury that, in order to defend against the charges, Deer had the burden of proving by a preponderance of the evidence that the sexual intercourse occurred without her knowledge or consent. Because this issue is likely to recur if the State refiles the charges against Deer, we address it here.
¶ 17 The due process clause of the Fourteenth Amendment to the United States Constitution requires the prosecution to prove beyond a reasonable doubt every fact necessary to constitute the crime charged. In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Every crime consists of two components: (1) an actus reus and (2) a mens rea. State v. Eaton, 168 Wash.2d 476, 480, 229 P.3d 704 (2010). The actus reus is "[t]he wrongful deed that comprises the physical components of a crime," while the mens rea is "[t]he state of mind that the prosecution ... must prove that a defendant had when committing a crime." BLACK'S LAW DICTIONARY 41, 1075 (9th ed.2009). Although the "`legislature has the authority to create a crime without a mens rea element,'" Eaton, 168 Wash.2d at 481, 229 P.3d 704 (quoting State v. Bradshaw, 152 Wash.2d 528, 532, 98 P.3d 1190 (2004)), even such "strict liability" crimes require "a certain minimal mental element ... in order to establish the actus reus itself." State v. Utter, 4 Wash.App. 137, 139, 479 P.2d 946 (1971). "This is the element of volition." Utter, 4 Wash.App. at 139, 479 P.2d 946. See also BLACK'S, supra, at 1710 (defining "volition" as "[t]he act of making a choice or determining something"). "An `act' committed while one is unconscious is in reality no act at all. It is merely a physical event or occurrence for which there can be no criminal liability." Utter, 4 Wash.App. at 143, 479 P.2d 946.
¶ 18 Our Supreme Court has recently explained why the imposition of criminal liability requires a volitional act:
Fundamental to our notion of an ordered society is that people are punished only for their own conduct. Where an individual has taken no volitional action she is not generally subject to criminal liability as punishment would not serve to further any of the legitimate goals of the criminal law. We punish people for what they do, not for what others do to them. We do not punish those who do not have the capacity to choose. Where the individual has not voluntarily acted, punishment will not deter the consequences.
As these principles suggest, although an individual need not possess a culpable mental state in order to commit a crime, there is "a certain minimal mental element required in order to establish the actus reus itself." Movement must be willed; a spasm is not an act. It is this volitional aspect of a person's actions that renders her morally responsible and her actions potentially deterrable. To punish an individual for an involuntary act would run counter to the principle that "a person cannot be morally responsible for an outcome unless the outcome is a consequence of that person's action." It would create what Simester has called "`situational liability,'" penalizing a defendant for a situation she simply finds herself in. "Unless there is a requirement of voluntariness, situational offenses are at odds with the deepest presuppositions of the criminal law." As Holmes tells us, the "reason for requiring an act is, that an act implies a choice, and that it is felt to be impolitic and unjust to make a man answerable for harm, unless he might have chosen otherwise." "[T]he choice [to act] must be made with a chance of contemplating the consequence complained of, or else it has no *969 bearing on responsibility for that consequence." A person cannot be answerable for a state of affairs unless she could have done something to avoid it.
Eaton, 168 Wash.2d at 481-83, 229 P.3d 704 (internal citations omitted).[5] Stated differently, "`[a]n act must be a willed movement or the omission of a possible and legally-required performance.'" Utter, 4 Wash.App. at 140, 479 P.2d 946 (quoting R. PERKINS, CRIMINAL LAW 660 (1957)). "`Criminal responsibility must be judged at the level of the conscious.'" Utter, 4 Wash.App. at 141, 479 P.2d 946 (quoting State v. Sikora, 44 N.J. 453, 470, 210 A.2d 193 (1965)). This is consistent with our legislature's pronouncement that the provisions of our criminal code must be interpreted "[t]o safeguard conduct that is without culpability from condemnation as criminal." RCW 9A.04.020(1)(b).
¶ 19 Here, the trial court rejected the proposed jury instruction, which would have required the State to prove beyond a reasonable doubt that Deer committed a volitional act. Instead, the trial court instructed the jury that Deer had the burden of proving her defense"that the child had intercourse with the defendant without the knowledge or consent of the defendant"by a preponderance of the evidence. CP at 24. Although the State is correct that rape of a child is a strict liability crime, see State v. Chhom, 128 Wash.2d 739, 743, 911 P.2d 1014 (1996), the "minimal mental element" of volitionas part of the actus reusmust be proved even for those crimes without a mens rea requirement. Thus, the State bears the burden of proving beyond a reasonable doubt that the defendant committed a volitional act. With regard to those sexual encounters as to which Deer contends she was asleep, the trial court erred by relieving the State of that burden.[6]
¶ 20 We note the distinction, however, between Deer's contention that she was asleep during at least one of the sexual encounters at issue and her contention that she did not consent to other sexual encounters. As to those sexual encounters to which Deer contends she did not consent, the applicable defense is not that no volitional act was committed but, rather, that she did not agree to the commission of the act. See BLACK'S, supra, at 346 (defining "consent" as "[a]greement, approval, or permission as to some act or purpose"). Because consent of the alleged perpetrator is not an element of the crime of rape of a child, due process does not require the State to prove that the defendant consented to the sexual encounters for which she is charged. Accordingly, an instruction on duressan affirmative defense that the defendant must prove by a preponderance of the evidence, see State v. Riker, 123 Wash.2d 351, 368-69, 869 P.2d 43 (1994)may be appropriate in such a case.
¶ 21 Due process requires the State to prove beyond a reasonable doubt all elements of a crime, including that the defendant committed a volitional act. Should the State refile charges against Deer and the case proceed to trial, it will be the testimony adduced at that trial that will inform the trial *970 court's discretion in determining proper instructions to the jury.[7]
¶ 22 Reversed and remanded with instructions to dismiss without prejudice.
We concur: SCHINDLER and ELLINGTON, JJ.
NOTES
[1] The first and second amended information also stated a birth date for R.R. (06/11/89) that would have made him 17 years old at the time of the incidents, although both documents correctly alleged that he was 15 years old when the incidents occurred.
[2] "A person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.079(1).
[3] "A person is guilty of child molestation in the third degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.089(1).
[4] Neither of the two exceptions set forth in the Pelkey decisionthat the amendment is to a lesser degree of the same charge or to a lesser included offenseapplies in this case. See Pelkey, 109 Wash.2d at 491, 745 P.2d 854. Rape of a child in the third degree is not a lesser included offense of child molestation, as rape of a child in the third degree requires "sexual intercourse," RCW 9A.44.079, and child molestation in the third degree does not, RCW 9A.44.089. See State v. Peterson, 133 Wash.2d 885, 890, 948 P.2d 381 (1997) (noting that a lesser included offense exists "`when all of the elements of the lesser offense are necessary elements of the greater offense. Put another way, if it is possible to commit the greater offense without having committed the lesser offense, the latter is not an included crime'") (quoting Pelkey, 109 Wash.2d at 488, 745 P.2d 854). Similarly, the inferior degree crime exception does not apply.
[5] In Eaton, our Supreme Court held that a statute permitting sentence enhancements encompassed a volitional element that the State must prove beyond a reasonable doubt. In doing so, the court explained the distinction between intent and volition:

The State appears to be under the misapprehension that requiring volition is the same as requiring intent. But nothing in our opinion should be read as requiring that the State prove a defendant intended to be in the enhancement zone or even that she knew she was in the enhancement zone. The State must simply demonstrate that the defendant took some voluntary action that placed him in the zone.
168 Wash.2d at 485-86 n. 5, 229 P.3d 704. Here, the State similarly fails to recognize that "[t]here is a distinction between volition and intent." City of Seattle v. Hill, 72 Wash.2d 786, 796 n. 1, 435 P.2d 692 (1967).
[6] The State argues that our Supreme Court's decisions in State v. Cleppe, 96 Wash.2d 373, 635 P.2d 435 (1981), and State v. Bradshaw, 152 Wash.2d 528, 98 P.3d 1190 (2004), are inconsistent with a requirement that the State prove beyond a reasonable doubt that a defendant committed a volitional act. However, in those cases, the court held that the possession of controlled substances statute did not have a mens rea element, see Bradshaw, 152 Wash.2d at 539-40, 98 P.3d 1190actus reus was not at issue. We will not recharacterize our Supreme Court's own pronounced basis for its decisions, particularly given that its more recent holding in Eaton is directly on point here.
[7] Deer contends in a statement of additional grounds that the trial court violated her Fifth Amendment privilege against self-incrimination by ruling that she would have to testify regarding her lack-of-consent defense in order for the "hue and cry" testimony of other witnesses to be permitted. A defendant who must testify in order to present a defense is not compelled to testify in violation of the Fifth Amendment. See Williams v. Florida, 399 U.S. 78, 83-84, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) ("The defendant in a criminal trial is frequently forced to testify himself ... in an effort to reduce the risk of conviction.... That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.") Thus, Deer was not compelled to testify in contravention of the Fifth Amendment by virtue of her decision to present a defense that required her own testimony.