[No. 41054-1-II.    Division Two.    July 17, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. MARCUS K. EDWARDS, *Appellant*.

*Sheri L. Arnold*, for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Kimberley A. DeMarco, Deputy*, for respondent.

¶1 ARMSTRONG, J. — A jury convicted Marcus Edwards of two counts of first degree child molestation. The trial court vacated his conviction on count II because of insufficient evidence that it was a separate and distinct act of first degree child molestation. Edwards argues on appeal that the trial court violated his due process rights by not instructing the jury that the State was required to prove he acted with volition and that defense counsel ineffectively represented him by failing to request a volitional act instruction. Edwards also faults counsel for failing to (1) adequately advise him of plea options and sentencing consequences, (2) secure testimony of two defense witnesses, and (3) propose a lesser included offense jury instruction on fourth degree assault. We find no reversible error and affirm Edwards's conviction. We also reject the State's appeal of the trial court's ruling vacating Edwards's conviction on count II.

## FACTS

¶2 In May 2003, Edwards moved in with Darnell Weathersby and Wendy Rollins in a three bedroom home. Rollins and Weathersby shared one bedroom, and Rollins's two children each had their own bedroom. Weathersby's two children also visited often and Edwards's son frequently stayed overnight on weekends. When the other children visited they slept in the Rollins's children's rooms, the girls in one room and the boys in another.

¶3 Edwards slept in the living room, usually on the couch and occasionally on the recliner. Edwards testified that a person standing in the kitchen could see the living room, as could someone standing in the hallway leading to the three bedrooms.

¶4 While Edwards was living with Rollins and Weathersby, K.G.[1] permitted her five-year-old daughter, A.G., to visit Edwards.[2] Edwards testified that A.G. visited 6 times at most, but A.G. recalled between 10 and 20 visits. K.G. testified that A.G. visited Edwards 1 or 2 times per month for six to nine months.

¶5 A.G. testified that she slept in the boys' room or in the living room. She recalled that Edwards slept in a chair in the living room. A.G. testified that Edwards would come into the boys' room where she was sleeping at night and carry her out to the living room.

¶6 A.G. recalled the first molestation incident: Edwards sat A.G. in a chair, on his lap, in the living room, and then he removed her pajama bottoms and underwear. He then touched her vagina with his fingers. Edwards pressed on her vagina really hard with his hand. His hand would "move," it felt "bad," and "it hurt." Report of Proceedings (RP) at 99. A.G. was awake during the touching; she could see his open eyes from the kitchen light. Afterwards, Edwards put A.G.'s clothes back on her. A.G. thought she was six years old at the time.

¶7 A.G. testified that Edwards touched her "front private" 10 to 15 times, but she provided details of only the first incident. RP at 101. She stated that Edwards always touched her in the same way—he would come pick her up while she was sleeping, take her to the chair, remove her clothes, and touch her with his hand.

¶8 Edwards testified that one night in late June 2003, he fell asleep after watching television in the living room

---

[1] We use initials to identify relatives of A.G. to maintain anonymity.

[2] Edwards and K.G. had been married previously for a short time.

recliner. While asleep, he had a vivid sexual dream about a woman. He stated that "I woke up, realized that my hands were—my hand was in [A.G.]'s underwear." RP at 387. Edwards admitted that his hand was touching her vagina. A.G. was on top of Edwards but Edwards had no idea how she got there. He immediately removed his hand when he woke up.

¶9 Edwards called three character witnesses, including his church pastor. The defense also called a 13-year-old girl, A.G.'s best friend, who testified that A.G. told her that "mom's friend," not Edwards, improperly touched her. RP at 321-22.

¶10 In July 2009, Edwards voluntarily went to the Lakewood Police Department and spoke with Detective Eggleston. At first, Edwards denied any sexual contact with A.G. About an hour and a half into the interview, Edwards told Detective Eggleston that he had an erotic dream about an adult woman and woke up to find A.G. in his lap and his hand on her vagina.

## Procedure

¶11 The State charged Edwards with four counts of first degree child molestation under RCW 9A.44.083. During the State's case-in-chief, defense counsel asked the trial court whether defense witnesses could provide telephonic testimony. The State objected, and the trial court denied the request.

¶12 During closing argument, defense counsel argued that jury instruction 6, defining the elements of "sexual contact," required the following:

touching of a sexual or intimate parts of a person done for the purpose ... of gratifying sexual desires of either party. It's more than just for sexual gratification, which even that is very questionable, since he is having a dream about an adult woman, but the reason, I submit to you, why the dream incident could not be the basis for a child molestation conviction as a matter of law is because it has to be purposeful.

RP at 475. Defense counsel further argued that

> [p]urposeful is intentional. I submit to you that, as a matter of law, you know, you cannot convict Mark based on the dream incident when he is touching, you know, improperly touching that area when he is dreaming. You know, how can you do something that is purposeful and intentional when you are dreaming? I submit to you, you cannot.

RP at 476. The jury convicted Edwards of counts I and II and acquitted him of counts III and IV.

¶13 Before sentencing, Edwards's trial counsel, Mark Watanabe, moved for a new trial, arguing that he had ineffectively represented Edwards by failing to obtain the testimony of two out-of-state witnesses. Watanabe submitted his own declaration that he had been ineffective and a declaration by attorney Andrew Schwarz attesting to Watanabe's deficient performance. Watanabe then withdrew, and the court appointed John Hill, who also filed a supplemental motion for a new trial.

¶14 Hill provided declarations from (1) a postconviction defense investigator, (2) Edwards's mother, (3) Edwards, (4) jurors, (5) out-of-state witnesses who did not testify at trial, and (6) consulting Pierce County defense attorneys; he also provided e-mail communications between Watanabe and Edwards and Watanabe and Deputy Prosecutor Michelle Hyer. In addition, defense counsel submitted Edwards's polygraph results evaluating the truthfulness of his declaration that Watanabe provided ineffective assistance.

¶15 After a hearing, the trial court denied Edwards's motion for a new trial, finding that defense counsel provided effective representation. But the trial court vacated Edwards's conviction on count II because of insufficient evidence of juror unanimity.

## ANALYSIS

### I. Volitional Act

¶16 Edwards argues that the trial court violated his due process rights by failing to instruct the jury that the State had to prove beyond a reasonable doubt that his act was volitional.[3] He further contends that the trial court shifted the burden to him to prove the act was involuntary. The State responds that Edwards waived the issue because he did not request a volitional act jury instruction.

¶17 Generally, a party who fails to object to jury instructions below waives a claim of the instructional error on appeal. RAP 2.5(a); *State v. Schaler*, 169 Wn.2d 274, 282, 236 P.3d 858 (2010). But a defendant does not waive a manifest constitutional error by failing to object below. RAP 2.5(a)(3); *State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001). We review a claim of manifest constitutional error de novo. *State v. Drum*, 168 Wn.2d 23, 31, 225 P.3d 237 (2010). Thus, Edwards must demonstrate that the error (1) is manifest and (2) is of constitutional dimension. RAP 2.5(a); *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). The claimed error is manifest if Edwards can show it had practical and identifiable consequences at trial that actually prejudiced him. *O'Hara*, 167 Wn.2d at 99. And we may subject a manifest constitutional error to a harmless error analysis. *O'Hara*, 167 Wn.2d at 98. Here, Edwards fails to demonstrate that the claimed error is manifest.

¶18 Due process principles are usually satisfied if the trial court instructs the jury on each element of the charge

---

[3] Edwards also argues that defense counsel ineffectively represented him by not proposing a jury instruction that allowed Edwards to argue that he lacked the requisite volition. But Edwards fails to show deficient performance or resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Defense counsel argued at trial that Edwards acted without the intent to gratify his own sexual desires, which the record supports was a legitimate trial strategy. And given the victim's testimony and Edwards's initial denial of any wrongdoing to the detective, we find it unlikely the jury would have acquitted him if the trial court had given a volitional instruction.

and that the State must prove each element beyond a reasonable doubt. *State v. Scott*, 110 Wn.2d 682, 690, 757 P.2d 492 (1988). Every crime must contain an actus reus and a mens rea. *State v. Eaton*, 168 Wn.2d 476, 480, 229 P.3d 704 (2010). The actus reus is the wrongful deed that is the physical component of a crime, while the mens rea is the state of mind the State must prove that a defendant had when committing a crime. *Eaton*, 168 Wn.2d at 481. The State must prove a certain minimal mental element of volition to establish the actus reus:

> Fundamental to our notion of an ordered society is that people are punished only for their own conduct. Where an individual has taken no volitional action, [he] is not generally subject to criminal liability as punishment would not serve to further any of the legitimate goals of the criminal law.

*Eaton*, 168 Wn.2d at 481-82.

¶19 Here, the trial court instructed the jury that

> [a] person commits the crime of child molestation in the first degree when the person has sexual contact with a child who is less than twelve years old, who is not married to the person, and who is at least thirty-six months younger than the person.

Clerk's Papers (CP) at 52. The trial court also instructed the jury that to convict Edwards of first degree child molestation, the State had to prove each of the following elements beyond a reasonable doubt:

> (1) That on or about the time period between the 1st of September, 2002, and the 12th of November, 2003, the defendant had sexual contact with A.G., separate and distinct from those acts alleged in Count II, III, and IV;
>
> (2) That A.G. was less than twelve years old at the time of the sexual contact and was not married to the defendant;
>
> (3) That A.G. was at least thirty-six months younger than the defendant; and
>
> (4) That the acts occurred in the State of Washington.

CP at 57. The instructions added that the defendant had no burden of proving a reasonable doubt existed as to the elements.

¶20 The jury instructions defined "sexual contact" as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party." CP at 53. To prove sexual contact, an element of child molestation, the State must prove a purpose or intent to gratify sexual desires. *State v. Stevens*, 158 Wn.2d 304, 309-10, 143 P.3d 817 (2006); *State v. French*, 157 Wn.2d 593, 611, 141 P.3d 54 (2006).

¶21 Edwards relies on two recent cases, *Eaton* and *Deer*, to support his claim that the State was required to prove the voluntary nature of the charged act beyond a reasonable doubt.[4] *Eaton*, 168 Wn.2d 476; *State v. Deer*, 158 Wn. App. 854, 244 P.3d 965 (2010), *review granted*, 171 Wn.2d 1012 (2011). These cases are inapposite.

¶22 In *Eaton*, our Supreme Court held that although an individual need not possess a culpable mental state to commit the crime of possessing a controlled substance, a sentence enhancement for possession within a jail required a volitional act. *Eaton*, 168 Wn.2d at 482, 487. The police arrested Eaton for driving under the influence and took him to jail. *Eaton*, 168 Wn.2d at 479. Police discovered methamphetamine in Eaton's sock during a search at the jail. *Eaton*, 168 Wn.2d at 479. The State charged Eaton with possession of a controlled substance and sought a sentence enhancement for possessing the substance in jail. *Eaton*, 168 Wn.2d at 479-80. The court held that the sentence

---

[4] Edwards also provides citations to authority outside this jurisdiction; however, in each case the defendant requested a jury instruction on volition that the trial court rejected. *See, e.g., Brown v. State*, 955 S.W.2d 276, 277 (Tex. Crim. App. 1997) (defendant was bumped from behind, and his handgun accidentally fired and fatally wounded the victim); *State v. Lara*, 902 P.2d 1337, 1338 (Ariz. 1995) (Lara requested a voluntary act instruction because of his brain impairment and personality disorder that impaired his judgment when he assaulted and attempted to murder Kucsmas). And in *Baird v. State*, 604 N.E.2d 1170, 1176-77 (Ind. 1992), the court held that Baird failed to provide substantial evidence that he did not act voluntarily.

enhancement required a volitional act and that Eaton's movement from the street to the jail was involuntary because the police forcibly took him there. *Eaton*, 168 Wn.2d at 484. *Eaton* does not help Edwards because the criminal conduct here was not caused by an outside force.

¶23 In *Deer*, 158 Wn. App. at 864, Division One of this court held that although rape of a child is a strict liability crime, the State was required to prove the "minimal mental element" of volition. The State charged Deer with third degree child rape, and Deer claimed that she was asleep during at least one sexual encounter at issue. *Deer*, 158 Wn. App. at 859. Notably, both Deer and the State proposed a jury instruction requiring the State to prove beyond a reasonable doubt that Deer committed a volitional act. *Deer*, 158 Wn. App. at 859-60. The trial court rejected the proposed instruction and instead instructed the jury that Deer had the burden to prove her defense—that the child had sexual intercourse with her without her knowledge or consent. *Deer*, 158 Wn. App. at 864. Division One reversed, concluding that due process required the State to prove beyond a reasonable doubt all elements of the crime, including that Deer committed a volitional act. *Deer*, 158 Wn. App. at 865. *Deer* also does not help Edwards because he did not claim at trial that he committed no act while asleep; rather, he claimed that his touching was not purposeful.

¶24 Division One also discussed the lack of volition as a defense in *State v. Utter*, 4 Wn. App. 137, 479 P.2d 946 (1971). The State charged Utter with second degree murder. *Utter*, 4 Wn. App. at 138. Utter testified that as a result of his jungle warfare training and military experience, he would react violently under certain circumstances. *Utter*, 4 Wn. App. at 139. A psychiatrist also testified for Utter and defined "conditioned response" to the jury. *Utter*, 4 Wn. App. at 139. The trial court instructed the jury to disregard this evidence, ruling that Washington did not recognize the defense of conditioned response. *Utter*, 4 Wn. App. at 139.

Division One affirmed, holding that the evidence "was insufficient to present the issue of defendant's unconscious or automatistic state at the time of the act to the jury." *Utter*, 4 Wn. App. at 143. The court explained that

"[i]f a person is in fact unconscious at the time he commits an act which would otherwise be criminal, he is not responsible therefor.

"The absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability."

*Utter*, 4 Wn. App. at 142 (quoting 1 RONALD A. ANDERSON, WHARTON'S CRIMINAL LAW AND PROCEDURE § 50 (1957)).

¶25 Here, the trial court permitted Edwards, unlike *Utter*, to present his theory to the jury, which was that his conduct was not for the purpose of sexual gratification. Moreover, at trial, Edwards did not argue that his actions lacked volition but rather that his actions lacked the intent required for sexual contact. On appeal, Edwards's counsel reframes the defense's argument and contends that the trial court should have instructed the jury that the State must prove Edwards acted with volition. But, because the record demonstrates that defense counsel was permitted to argue that the State failed to prove sexual contact, Edwards fails to show a manifest error that prejudiced him.

¶26 Edwards testified that his erotic dream was beyond his control. Defense counsel pursued this theory and argued a lack of an intentional act for sexual gratification:

[Defense counsel]: And you maintained your denial of the intentional, repeated molestation until the end?

[Edwards]: Yes, sir.

RP at 407. A.G. testified, however, that both she and Edwards were awake when this molestation happened. A.G. saw that Edwards's eyes were open because of the kitchen light. Afterward, Edwards put A.G.'s clothes back on her.

And according to A.G., similar conduct occurred 10 to 15 times.

¶27 During closing argument, defense counsel argued that sexual contact required an intentional and purposeful act:

> touching of a sexual or intimate parts of a person done for the purpose ... of gratifying sexual desires of either party. It's more than just for sexual gratification, which even that is very questionable, since he is having a dream about an adult woman, but the reason, I submit to you, why the dream incident could not be the basis for a child molestation conviction as a matter of law is because it has to be purposeful ... purposeful is intentional. I submit to you that, as a matter of law, you know, you cannot convict Mark based on the dream incident when he is touching, you know, improperly touching that area when he is dreaming. You know, how can you do something that is purposeful and intentional when you are dreaming? I submit to you, you cannot.

RP at 475-76.

¶28 Edwards presented no evidence at trial that his conduct during the dream was beyond his control and thus not volitional. And the trial court properly instructed the jury on the elements of first degree child molestation, including that sexual contact requires the act be "done for the purpose of gratifying sexual desires." CP at 52-53. In the absence of a volitional act instruction and some evidence that Edwards could have lacked volition under these circumstances, Edwards cannot demonstrate actual prejudice. Thus, he has not shown the claimed error was manifest.[5]

## II. Effective Assistance of Counsel

¶29 Edwards claims that counsel ineffectively represented him by failing to (1) adequately advise him of plea

---

[5] For the same reasons, the error, if any, was harmless. A constitutional error is harmless if it appears "beyond a reasonable doubt that the error did not contribute to the ultimate verdict." *State v. Berube*, 150 Wn.2d 498, 505-06, 79 P.3d 1144 (2003) (citing *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002)).

options and sentencing consequences, (2) secure the testimony of two defense witnesses, and (3) propose a "to convict" instruction for the lesser included offense of fourth degree assault.

¶30 The federal and state constitutions guarantee a criminal defendant the right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. article I, § 22. A defendant claiming ineffective assistance of counsel must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prove deficient performance, the defendant must show that counsel's performance fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "There is a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. To satisfy the prejudice prong, the defendant must show that the outcome of the proceedings would have differed but for counsel's deficient performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687.

A. Plea Options and Sentencing

¶31 Edwards argues that defense counsel failed to adequately advise him of plea options and sentencing consequences. Edwards focuses on two e-mails from defense counsel, which he claims failed to provide him with an explanation of the comparative consequences of pursuing a special sex offender sentencing alternative (SSOSA), pleading guilty, or proceeding to trial. The State responds that defense counsel communicated the substance of the plea offers to Edwards and that Edwards fails to show prejudice.

¶32 In light of the Supreme Court's recent rulings in *Lafler v. Cooper*, ___U.S. ___, 132 S. Ct. 1376, 182 L. Ed.

2d 398 (2012), and *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), it is clear that a defendant's right to counsel extends to plea negotiations. Defense counsel must actually and substantially assist a client in deciding whether to plead guilty. *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984). In the plea bargaining context, counsel must communicate actual offers, discuss tentative plea negotiations, and discuss the strengths and weaknesses of the defendant's case so that the defendant knows what to expect and can make an informed decision on whether to plead guilty. *State v. James*, 48 Wn. App. 353, 362, 739 P.2d 1161 (1987) (collecting cases from other jurisdictions holding that defense counsel's failure to advise a client of a plea bargain offer amounts to ineffective assistance). We review the issue by asking whether defense counsel communicated the offers to the defendant and whether the defendant has demonstrated a reasonable probability that the defendant would have accepted the offer. *Cooper*, 132 S. Ct. at 1384; *Frye*, 132 S. Ct. at 1409.

¶33 Counsel must, at a minimum, "reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty." *State v. A.N.J.*, 168 Wn.2d 91, 111-12, 225 P.3d 956 (2010). The State made A.N.J. a plea offer: if he pleaded guilty to one count of first degree child molestation, the State would recommend a special sex offender disposition alternative (SSODA); and, if A.N.J. finished treatment, the charge would be reduced to second degree child molestation. *A.N.J.*, 168 Wn.2d at 101. A.N.J. accepted the plea offer. *A.N.J.*, 168 Wn.2d at 102. Declarations supporting A.N.J.'s motion to withdraw his guilty plea demonstrated that defense counsel spent less than an hour with the defendant before the plea hearing, did no independent investigation, did not review the plea agreement carefully, did not inform A.N.J.'s parents of what the SSODA would entail, and did not consult with experts. *A.N.J.*, 168 Wn.2d

at 102-03. And when A.N.J.'s parents asked whether the charge would be dropped from his record, defense counsel incorrectly stated that it could be removed when he turned 18 or 21. *A.N.J.*, 168 Wn.2d at 103. The court concluded that A.N.J. received ineffective assistance of counsel because he was misled about the consequences of his plea. *A.N.J.*, 168 Wn.2d at 111.

¶34 In *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006), the court held that defense counsel performed deficiently when he failed to investigate the defendant's criminal history, which included an out-of-state conviction. A jury convicted Crawford, and he was sentenced as a persistent offender. *Crawford*, 159 Wn.2d at 91. Crawford asserted that had he known before trial that he faced a potential life sentence, he would have accepted the prosecutor's offer. *Crawford*, 159 Wn.2d at 91-92. The court held that Crawford did not establish a reasonable probability that but for defense counsel's deficient performance, he would have avoided a life sentence. *Crawford*, 159 Wn.2d at 100. There was no evidence that the prosecutor was willing to offer Crawford the option of a guilty plea to a nonstrike offense. *Crawford*, 159 Wn.2d at 100. In denying Crawford's ineffective assistance claim, the court reiterated that a defendant "must affirmatively *prove* prejudice, not simply show that 'the errors had some conceivable effect on the outcome.' " *Crawford*, 159 Wn.2d at 99-100 (some emphasis omitted) (quoting *Strickland*, 466 U.S. at 693).

¶35 In support of his motion for a new trial, Edwards submitted two e-mails from defense counsel concerning plea offers. The first, sent on February 22, 2010, incorrectly stated that the State would require him to plead guilty to four counts of child molestation before recommending a SSOSA. In the actual offer, the State proposed a SSOSA if Edwards pleaded to three counts of first degree child molestation or, alternatively, he could plead guilty to one count of first degree child molestation with a standard range sentence of 51 to 68 months to life. Defense counsel

explained that a SSOSA sentence would require Edwards to plead guilty, obtain a sexual deviancy evaluation, and be willing to undergo appropriate treatment. Defense counsel further explained that he "spoke this morning to one of the top criminal defense attorneys in the area in these cases" who agreed that the SSOSA alternative was a "non-starter." CP at 269. Defense counsel did not communicate the alternative option permitting Edwards to plead guilty to one count of first degree child molestation.[6]

¶36 On March 1, 2010, defense counsel sent Edwards a second e-mail that included the State's "final offer," and advised him to proceed to trial. CP at 272. In his declaration, Edwards asserts that defense counsel failed to explain the State's language describing his sentencing options, which included an "indeterminate sentence." *See* CP at 273-74. Defense counsel explained that his recommendation for going to trial was based on his belief that the only reasonable option was to require the State to prove the charges beyond a reasonable doubt. This evidences some discussion of the strengths and weaknesses of Edwards's case so that he would know what to expect at trial and be able to make an informed judgment on whether to plead guilty. Defense counsel also advised Edwards of the SSOSA option before advising the prosecutor that they would not agree to it. Moreover, Edwards does not claim that he would have pleaded guilty either in exchange for the SSOSA or the State's recommended standard range sentence of 51 to 68 months to life. He merely asserted after the jury's verdict that he "would have pursued a plea negotiation." CP at 267.

¶37 We are satisfied that defense counsel reasonably evaluated the evidence against Edwards and the likelihood of a conviction at trial so that Edwards could make an informed decision whether to plead guilty. *See A.N.J.*, 168 Wn.2d at 111-12. Edwards does not show a reasonable probability that he would have accepted a plea agreement.

---

[6] But defense counsel did reference his previous discussions that day and the prior evening with Edwards regarding his options for the next stages of his case.

Thus, he fails to show that counsel's representation prejudiced him.

B. Testimony of Defense Witnesses

¶38 Edwards faults his attorney for not securing testimony of Weathersby and Rollins, which he claims was necessary to his defense. Edwards contends that "they were the only adult witnesses who could testify to many of the factual issues," that their observations and perceptions were important, and that their testimony could have corroborated his own testimony. Br. of Appellant at 38. Again, Edwards fails to show prejudice.[7]

¶39 Assuming counsel should have arranged for Rollins and Weathersby to testify, Edwards has not shown a reasonable probability the jury would have acquitted him had the two testified. In support of the motion for a new trial, Weathersby declared he would have testified that Edwards's son and A.G. often visited on the weekends, A.G. often slept in the boys' bedroom, Edwards and Weathersby played video games in the living room after the children went to sleep, the reclining chair in the living room is clearly visible from the kitchen and the bathroom, and he never saw Edwards touch A.G. improperly.

---

[7] Edward relies on *Lord v. Wood*, 184 F.3d 1083 (9th Cir. 1999), to argue that his defense counsel provided ineffective assistance by failing to present necessary witnesses. The case is distinguishable on its facts. In *Lord*, 184 F.3d at 1096, the Ninth Circuit granted habeas relief in a capital case because defense counsel prejudiced defendant by failing to personally interview or present testimony of three possible alibi witnesses. The court noted that it would be inclined to defer to counsel's judgment that the statements of three potential exonerating eyewitnesses in a murder case were vague and/or inaccurate in deciding not to call those witnesses if counsel had interviewed those witnesses in person. *Lord*, 184 F.3d at 1093-95.

Edwards also cites to several federal cases to argue that the court should not speculate about an attorney's trial strategy, but these cases do not support Edwards's argument here. *Hendricks v. Vasquez*, 974 F.2d 1099 (1992) (reversed in part because the district court failed to hold an evidentiary hearing on Hendricks's claim of ineffective assistance at guilt and penalty phases of capital murder trial); *Houston v. Schomig*, 533 F.3d 1076 (9th Cir. 2008) (trial court should have conducted a complete evidentiary hearing on Houston's conflict of interest claim arising from public defender's office prior representation of State's star witness).

¶40 Rollins also submitted a declaration in which she stated that she had personal knowledge of A.G.'s demeanor during her visits, she disciplined A.G., and "[i]t would not surprise [Rollins] if A.G. had stated that she wanted to stop the weekend visitations because [Rollins] supposedly yelled at her and was mean to her." CP at 97.

¶41 But Edwards testified about the layout of the house using a drawing admitted as exhibit 9. The location of the incident was not disputed. And neither Weathersby nor Rollins declared that they witnessed the incident. More importantly, Edwards never denied the improper touching. Rather, he admitted the conduct but claimed that he was asleep during it and thus was not guilty because his conduct was not volitional. Although Rollins and Weathersby could have rebutted A.G.'s testimony that the molesting occurred 10 to 15 times, they could not have ruled out multiple incidents. Edwards admitted that A.G. made 6 overnight visits, and K.G. testified to 6 to 18 visits over six to nine months. Accordingly, we find no reasonable probability the trial result would have been different if these witnesses had testified.

## C. Lesser Included Jury Instruction

¶42 Edwards also claims that his counsel should have requested a lesser included fourth degree assault instruction. He argues that the evidence supported the fourth degree assault instruction and that defense counsel's decision to forgo such an instruction was not a legitimate trial tactic.

¶43 The threshold issue is whether Edwards's defense counsel was ineffective in forgoing a lesser included offense instruction. *See Grier*, 171 Wn.2d at 42. A defendant's right to present a lesser included offense instruction to the jury is statutory. RCW 10.61.006, .010; *State v. Bowerman*, 115 Wn.2d 794, 805, 802 P.2d 116 (1990). A defendant is entitled to a lesser included offense instruction if (1) each of the elements of the lesser offense is a necessary

element of the offense charged (legal prong) and (2) the evidence in the case supports an inference that the lesser crime was committed (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The factual prong of *Workman* is satisfied when substantial evidence supports a rational inference that the defendant committed only the lesser included or inferior degree offense to the exclusion of the greater one. *State v. Fernandez-Medina*, 141 Wn.2d 448, 461, 6 P.3d 1150 (2000). The State concedes in its brief that the legal prong is met here. *Stevens*, 158 Wn.2d at 311.

¶44 Under the factual prong, evidence must support the inference that the defendant committed only fourth degree assault. It is not disputed that Edwards touched A.G. on her vagina. According to Edwards's testimony, the touch was not for the purpose of sexual gratification. Based on this evidence alone, the evidence supports an inference that Edwards committed fourth degree assault. *See Stevens*, 158 Wn.2d at 312 (holding that the trial court erred by not instructing the jury on fourth degree assault as a lesser included offense of second degree child molestation because the evidence supported an inference that Stevens touched the child victim without privilege or consent, the touch was offensive, and therefore the touch was arguably unlawful).

¶45 Edwards argues that defense counsel's failure to consult him constituted ineffective representation. The decision whether to ask for a lesser included offense instruction is a "decision that requires input from both the defendant and [defense] counsel but ultimately rests with defense counsel." *Grier*, 171 Wn.2d at 32. Grier's defense counsel consulted with her about withdrawing a request for lesser included offense instructions, and evidence of this consultation was on the record. *Grier*, 171 Wn.2d at 20, 39. The court held that Grier's counsel effectively assisted her because based on the facts, the defendant and defense counsel could have decided that the all or nothing approach was the best strategy to achieve an acquittal—thus, there

was no deficient performance. *Grier*, 171 Wn.2d at 43. Grier also failed to show prejudice; "[a]ssuming, as this court must, that the jury would not have convicted Grier of second degree murder unless the State had met its burden of proof, the availability of a compromise verdict would not have changed the outcome of Grier's trial." *Grier*, 171 Wn.2d at 43-44.

¶46 Here, the record does not show whether Edwards concurred in the decision to present the case to the jury as all or nothing, or whether counsel acted without consultation. Yet to overcome the presumption in favor of effective representation, Edwards must show that counsel's conduct fell below an objectively reasonable standard. While Edwards declared in support of his motion for a new trial that "I would have pursued a plea negotiation and directed seeking includtion [sic] of instructions to lesser included offence [sic] of assault 4th," this is not enough to show counsel acted deficiently. CP at 267. As in *Grier*, Edwards and defense counsel "could have believed that an all or nothing strategy was the best approach to achieve an outright acquittal. That this strategy ultimately proved unsuccessful is immaterial to an assessment of defense counsel's initial calculus; hindsight has no place in an ineffective assistance analysis." *Grier*, 171 Wn.2d at 43 (citation omitted). Absent evidence in the record of a failure to consult, Edwards cannot establish that defense counsel's performance was deficient and thereby satisfy the first *Strickland* prong.

## III. INSUFFICIENT EVIDENCE

¶47 The State claims that the trial court erred in vacating the count II conviction because of insufficient evidence of separate and distinct acts. The State contends that A.G.'s generic testimony alleging 10 to 15 acts of first degree child molestation was sufficiently specific to affirm the jury verdict on count II.

¶48 A defendant may be convicted only when a jury unanimously finds that he committed the charged crime. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988). When the State presents evidence of multiple acts of similar misconduct, any one of which could form the basis of the count charged, the State must either elect which of these acts it relies on for a conviction, or the trial court must instruct the jury that all 12 jurors must agree that the State has proved the same underlying act beyond a reasonable doubt. *State v. Coleman*, 159 Wn.2d 509, 511-12, 150 P.3d 1126 (2007); *Kitchen*, 110 Wn.2d at 409. In sexual abuse cases where the State alleges multiple acts within the same charging period, the State need not elect particular acts associated with each count so long as the evidence clearly delineates specific and distinct incidents of sexual abuse during the charging periods. *State v. Hayes*, 81 Wn. App. 425, 431, 914 P.2d 788 (1996). This ensures a unanimous verdict on one criminal act. *Coleman*, 159 Wn.2d at 512. Where there is neither an election nor a unanimity instruction in a multiple acts case, the State has not met the constitutional requirement of unanimity. *Coleman*, 159 Wn.2d at 512; *Kitchen*, 110 Wn.2d at 411.

¶49 We conclude that the trial court did not err in vacating the count II conviction for insufficient evidence of separate and distinct acts of first degree child molestation. A party who challenges the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). In considering Edwards's motion for a new trial, the superior court had to view the evidence in the light most favorable to the State to decide if the jury could have found guilt beyond a reasonable doubt. *See Salinas*, 119 Wn.2d at 201. The court may not review the jury's credibility decisions, and circumstantial evidence is as reliable as direct evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

¶50 In *Hayes*, 81 Wn. App. at 438, Division One of this court developed a three-pronged test to determine whether generic testimony was specific enough to sustain a conviction: the alleged victim must (1) describe the act or acts with sufficient specificity to allow the jury to determine what offense, if any, has been committed; (2) describe the number of acts committed with sufficient certainty to support each count the prosecution alleged; and (3) be able to describe the general time period in which the acts occurred. The *Hayes* court held that the victim's generic testimony was sufficiently specific and sustained the convictions for four counts of child rape. *Hayes*, 81 Wn. App. at 439. The victim's testimony that Hayes " 'put his private part in mine,' " along with her description of the usual course of conduct, satisfied the first prong; her testimony that he did this at least " 'four times' " and up to " 'two or three times a week' " satisfied the second prong; and her testimony that the incidents occurred during the charging period satisfied the third prong. *Hayes*, 81 Wn. App. at 438-39.

¶51 Here, the jury instructions provided that "[t]o convict the defendant on any count of child molestation in the first degree, one particular act of child molestation in the first degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved." CP at 56. The trial court vacated Edwards's conviction on count II because of insufficient evidence of juror unanimity. The trial court found that "the testimony of the victim was that this occurred 10 to 15 times under the same circumstances in the exact same way. There was nothing differentiating any of those 10 to 15 circumstances." RP at 553. The trial judge further explained, "And in this case, with regard to the second count, not the first count that Mr. Edwards acknowledged the conduct, but on the second count, there wasn't sufficient specificity in testimony to differentiate between any of the acts of molestation that occurred." RP at 554.

¶52 The State asserts that "A.G.'s testimony that defendant put his hand under her underwear and rubbed her

vagina was sufficiently specific to allow the jury to determine that defendant committed child molestation in the first degree." Br. of Resp't at 28. We disagree. When A.G. testified that Edwards touched her vagina, his hand would "move," it felt "bad," and "it hurt," she was referring to only the "first time." RP at 95, 97, 99.

¶53 Next, the State reasons that A.G. testified that Edwards engaged in the same conduct 10 or 15 times. When the State asked her, however, "Would he touch you in your front private every time you were there?" A.G. answered, "Most of the time, yes." RP at 101.

¶54 A.G. testified that the first time she remembered Edwards touching her was when she was about five years old but she could have been six. There was no evidence defining the time period in which any other act occurred. A.G. testified to the specifics of the "first time" but generally stated that Edwards touched her "front private" 10 to 15 times. RP at 101. The four "to convict" instructions, aside from the count number, were exactly the same, including the time period.

¶55 The evidence does not clearly delineate between specific and distinct incidents of sexual abuse during the charging period. Because the State failed to present sufficient evidence for the jury to convict Edwards of two separate and distinct counts of first degree child molestation, the trial court did not err in vacating count II.

¶56 Affirmed.

WORSWICK, C.J., and VAN DEREN, J., concur.

Review denied at 176 Wn.2d 1025 (2013).