IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70435-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| GREGORY JAMES CATER, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 16, 2015 |

SCHINDLER, J. — On July 29, 2013, Gregory James Cater filed a motion to enlarge time to file a notice of appeal of his 1979 plea of guilty to arson in the first degree and the "Order Deferring Imposition of Sentence (Probation)." Cater asserts that because he was misadvised about the scope of his limited right to appeal a guilty plea, he did not knowingly, intelligently, and voluntarily waive his constitutional right to appeal. The State concedes the 1979 plea agreement did not expressly state Cater had the right to appeal a guilty plea on limited grounds but asserts the record establishes Cater waived his right to appeal. Because the circumstances demonstrate Cater waived his right to appeal, we deny the motion to enlarge time.

1979 Arson in the First Degree Conviction

On March 1, 1979, a Seattle police officer responded to the report of an auto theft at an apartment building located on Empire Way South. The officer met with Clara

Lewis and her boyfriend, Gregory James Cater, at Lewis's apartment. Lewis accused Cater of stealing her car. The officer and Lewis left the apartment to retrieve the car. When Lewis and the officer returned five to seven minutes later, Cater was gone and two fires were burning in Lewis's apartment. Other residents of the apartment units were at home at the time.

The police arrested Cater later that day. Following Miranda[1] warnings, Cater admitted that he set the fires in Lewis's apartment.

On March 7, the State charged Cater with arson in the first degree, a class A felony with a maximum term of life in prison, in violation of former RCW 9A.48.020(1)(a), (b), and (c) (1975).[2] An attorney was appointed to represent Cater.

On April 9, Cater agreed to plead guilty as charged. In exchange, the State agreed to recommend a deferred sentence. In the "Statement of Defendant on Plea of Guilty," Cater acknowledged he was pleading guilty to arson in the first degree "as charged in the information, a copy of which I have received;" that the State would recommend a deferred sentence with conditions; that he had read the Statement of Defendant on Plea of Guilty and had "no further questions to ask of the court;" and that he was "freely and voluntarily" pleading guilty to arson in the first degree "as charged." The Statement of Defendant on Plea of Guilty states that by entering a plea of guilty,

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The information alleged, in pertinent part:

That the defendant Gregory J. Cater, in King County, Washington, on or about March 1, 1979, did knowingly and maliciously cause a fire and explosion which damaged a dwelling located at 4018 Empire Way S., Seattle, King County, in which there was at that time a human being who was not a participant in the crime and which fire and explosion was manifestly dangerous to human life;

Contrary to [former] RCW 9A.48.020(1)(a)(b) and (c), and against the peace and dignity of the state of Washington.

2

Cater agreed to waive a number of rights, including the right to appeal "any finding of guilty and the sentence."

Cater signed the Statement of Defendant on Plea of Guilty dated April 9, 1979 "in open court in the presence of his attorney." King County Superior Court Judge Frank Eberharter accepted the plea as knowing, intelligent, and voluntary, and found Cater guilty as charged of arson in the first degree.

At the sentencing hearing on May 25, King County Superior Court Judge Francis Holman imposed a deferred sentence on condition Cater serve 90 days in jail but suspended the 90-day sentence subject to several conditions, including "full employment or training" and "continu[ing] alcohol and mental health counseling." Cater did not file an appeal.

Cater did not comply with the conditions of the deferred sentence. On March 22, 1985, the court ordered Cater to serve six months in the King County jail and terminated probation "upon [Cater's] release from custody."

1989 Arson in the First Degree and Murder in the First Degree Convictions

In 1988, Cater lived with his girlfriend, Margaret Susan Morris, and her 13-year-old son in a basement apartment of a house. At approximately 12:30 p.m. on August 6, 1988, firefighters responded to a fire at the house. Before the firefighters arrived, a neighbor entered the basement apartment and found Morris "engulfed in flames." The neighbor was able to carry Morris out of the apartment. Morris's son found his mother in the backyard. She was nude and severely burned.

The owners of the house said Cater and Morris frequently argued. Morris's son told firefighters that Cater and his mother argued earlier that day.

Cater told firefighters that "he pulled Morris out of the fire and stated that 'there was gas.' " Cater said that he "had walked into their bedroom carrying a gasoline container while smoking a cigarette and that somehow a fire had started."

The paramedics rushed Morris to Harborview Medical Center. Morris told the paramedics that "her boyfriend threw gasoline on her and lit it." Morris had "deep second and third degree burns covering 80% of her body" and was not expected to survive.

During an interview with police on August 8, Morris was able to respond to questions by nodding "yes" or "no." Morris indicated that Cater intentionally poured gasoline on her and on the bedroom floor and then ignited the gasoline. The investigation established that Cater used a five-gallon can "that was approximately half full [of gasoline] which he poured around the living area and onto Morris" before he ignited a handheld flame "and set it to the liquid ac[c]elerant."

On August 9, 1988, the State charged Cater with attempted murder in the first degree and arson in the first degree. After Morris died from her injuries on October 16, the State filed an amended information charging Cater with arson in the first degree and murder in the first degree. Cater denied intentionally setting the fire.

At trial, Cater admitted he and Morris argued the day of the fire. Cater testified that he had filled the lawnmower with gasoline and took it into the bedroom to work on it. Cater said that when he returned to the bedroom later and lit a cigarette, the gasoline ignited. The State introduced into evidence the 1979 conviction for arson in the first degree where he started fires in his girlfriend's apartment because he was angry with her to show intent and lack of accident. The jury found Cater guilty as charged.

Before the sentencing hearing, the defense acknowledged Cater's offender score included one point for his "prior First Degre[e] Arson conviction from 1979," resulting in a standard sentence range of 261 to 347 months of confinement. The defense requested a low-end sentence of 261 months.

At sentencing, the court determined the current offenses of arson in the first degree and murder in the first degree encompassed "the same criminal conduct" and counted as one point for purposes of calculating the offender score. Based on an offender score of 2, the standard sentence range for murder in the first degree was 261 to 347 months and for arson in the first degree was 31 to 41 months.

The court imposed an exceptional sentence above the standard range. The court concluded substantial and compelling reasons supported imposition of an exceptional sentence. The court imposed a sentence of 54 months for arson in the first degree and 347 months for murder in the first degree to run consecutively.[3]

---

[3] The court entered findings of fact and conclusions of law for an exceptional sentence. The findings state, in pertinent part:

1. The defendant's conduct during the commission of these offenses manifested deliberate cruelty to the victim, as provided in [former] RCW 9.94A.390(2)(a) [(1987)]. The defendant not only poured gasoline throughout the house and lit it, thereby preventing the escape of Susan Morris, but he also poured gasoline directly on her body as she lay on the bed, and lit her on fire. The fire on her body could not be extinguished, thus causing Morris severe pain, suffering and disfigurement before her death two months later.
2. The defendant poses a substantial danger to the public. The defendant has a prior Arson in the First Degree conviction based on similar facts — he lit a residence on fire when he was angry at a prior girlfriend in 19[7]9. Prior to committing the arson and murder in this case, the defendant also had threatened one month before that he would burn the house down with everyone in it. He also shows a lack of acknowledgement and remorse for these crimes. All these facts establish the defendant's potential future dangerousness to the public, which justifies a sentence above the standard range.
3. The defendant committed these crimes "in the presence" of the victim's son . . . . The thirteen-year-old boy found her nude body covered with severe burns within minutes of the crime. Not only did the defendant's actions deprive the boy of his mother, but it caused him extreme emotional distress as well.

5

Cater appealed the conviction and imposition of the exceptional sentence. In an unpublished opinion, we affirmed. State v. Cater, 60 Wn. App. 1035, 1991 WL 302497, review denied, 117 Wn.2d 1007, 815 P.2d 266 (1991).

2013 Assault in the Second Degree Charges

On February 14, 2013, the State charged Cater with two counts of assault in the second degree under King County Cause No. 13-1-01408-1 KNT. The information alleged that Cater assaulted his former girlfriend "by strangulation" in violation of RCW 9A.36.021(1)(g) and with "a knife" in violation of RCW 9A.36.021(1)(c). The State also alleged as an aggravating factor that the crimes were "part of an ongoing pattern of psychological, physical or sexual abuse of the same victim . . . manifested by multiple incidents over a prolonged period of time" under RCW 9.94A.535(3)(h)(i). In April, the State notified Cater that it intended to prosecute the case as a third strike under the persistent offender statute, RCW 9.94A.570.

Motion for Order of Indigency to Appeal 1979 Arson Conviction

In May 2013, the attorney representing Cater on the 2013 assault charges filed a "Motion for Order of Indigency - Criminal and Declarations in Support Thereof" under the 1979 arson cause number. In his declaration in support of the order of indigency, Cater stated he wanted to appeal the "constitutional validity of my guilty plea and the resulting sentence" for the 1979 conviction of arson in the first degree. The declaration states, in pertinent part:

> The guilty plea I entered in the above-captioned matter was done so in violation of my constitutional rights. I am appealing the constitutional validity of my guilty plea and the resulting sentence imposed by the court. My attorney is providing additional information below.

6

The attorney in the 2013 case argued the 1979 guilty plea was constitutionally invalid because Cater did not expressly acknowledge each element of arson in the first degree in the Statement of Defendant on Plea of Guilty. The attorney added there is no transcript of the 1979 plea and sentencing hearings, the court reporter from the plea hearing is unknown and the court reporter from the sentencing hearing is deceased, and court reporter's notes are kept no longer than 20 years. On May 10, the superior court entered an order of indigency.

Appeal of 1979 Order Deferring Imposition of Sentence

On May 15, 2013, Cater filed an appeal of the 1979 Order Deferring Imposition of Sentence (Probation). At the direction of this court, Cater filed a motion to enlarge the time to file a notice of appeal under RAP 18.8. The State filed an opposition to the motion. A commissioner referred the motion to enlarge time to a panel of judges for oral argument.

On December 3, 2013, Cater pleaded guilty in the assault charges to three non-strike offenses—unlawful imprisonment domestic violence, assault in the fourth degree domestic violence, and domestic violence misdemeanor violation of a court order.[4]

Motion to Enlarge Time to File Notice of Appeal

Under RAP 5.2(a), a defendant must file a notice of appeal within 30 days of the entry of the judgment and sentence. RAP 18.8(b) states that this court will extend the time to file a notice of appeal "only in extraordinary circumstances and to prevent a

---

[4] We grant the State's request to supplement the record and designate "Appendix J." Appendix J is the judgment and sentence in King County Cause No. 13-1-01408-1 KNT for the three non-strike offenses Cater pleaded guilty to on December 3, 2013—unlawful imprisonment domestic violence, assault in the fourth degree domestic violence, and domestic violence misdemeanor violation of a court order.

gross miscarriage of justice." Under RAP 18.8(b), "[t]he appellate court will ordinarily

hold that the desirability of finality of decisions outweighs the privilege of a litigant."[5]

However, strict application of RAP 18.8(b) must be balanced against a defendant's state

constitutional right to appeal. State v. Kells, 134 Wn.2d 309, 314, 949 P.2d 818 (1998).

The Washington State Constitution guarantees a criminal defendant the right to

appeal. CONST. art. I, § 22 (amend. 10). Article I, section 22 states, in pertinent part, "In

criminal prosecutions the accused shall have . . . the right to appeal in all cases." The

State bears the burden of demonstrating the defendant "understood his right to appeal

and chose not to exercise it." Kells, 134 Wn.2d at 315; State v. Sweet, 90 Wn.2d 282,

286, 581 P.2d 579 (1978). "[T]here is no presumption in favor of the waiver of the right

to appeal." Sweet, 90 Wn.2d at 286. Sweet requires the State to make some

affirmative showing that the defendant understood and chose not to exercise his right to

appeal. Kells, 134 Wn.2d at 315. The circumstances must reasonably give rise to an

inference that the defendant knowingly relinquished his right to appeal. Sweet, 90

Wn.2d at 287.

A defendant who pleads guilty retains a limited right to appeal collateral

questions such as the validity of the statute, sufficiency of the information, and an

understanding of the nature of the offense. See State v. Cross, 156 Wn.2d 580, 621,

132 P.3d 80 (2006); State v. Osborne, 102 Wn.2d 87, 92-93, 684 P.2d 683 (1984).

---

[5] RAP 18.8(b) states:

**Restriction on Extension of Time.** The appellate court will only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of appeal, a notice for discretionary review, a motion for discretionary review of a decision of the Court of Appeals, a petition for review, or a motion for reconsideration. The appellate court will ordinarily hold that the desirability of finality of decisions outweighs the privilege of a litigant to obtain an extension of time under this section. The motion to extend time is determined by the appellate court to which the untimely notice, motion or petition is directed.

Cater contends he did not knowingly, voluntarily, and intelligently waive or abandon his constitutional right to appeal the 1979 guilty plea and order deferring sentence. Cater relies primarily on the presumption that he did not waive his right to appeal. Cater also contends that by informing him that he was giving up the right to appeal "any finding of guilty and the sentence," the 1979 Statement of Defendant on Plea of Guilty effectively misadvised him about his right to appeal on limited grounds.

The State concedes that neither the Statement of Defendant on Plea of Guilty nor the Order Deferring Imposition of Sentence state Cater had the right to file an appeal on limited grounds and that the State bears the burden of establishing a knowing, intelligent, and voluntary waiver of the right to appeal.[6] The State argues that under the case law, the undisputed, albeit limited, record establishes that Cater knowingly, intelligently, and voluntarily relinquished his right to appeal the 1979 arson conviction.

In Sweet, the defendant did not file a direct appeal of his conviction but timely filed a personal restraint petition (PRP) alleging ineffective assistance of counsel deprived him of his constitutional right to appeal. Sweet, 90 Wn.2d at 284. Under the

---

[6] In 1979, the court rules required a judge at sentencing to advise the defendant of the right to appeal only if the judgment was not "based on a plea of guilty." Former CrR 7.1(b) (1979). The Supreme Court amended former CrR 7.1(b). CrR 7.2(b) now provides:

> **Procedure at Time of Sentencing.** The court shall, immediately after sentencing, advise the defendant: (1) of the right to appeal the conviction; (2) of the right to appeal a sentence outside the standard sentence range; (3) that unless a notice of appeal is filed within 30 days after the entry of the judgment or order appealed from, the right to appeal is irrevocably waived; (4) that the superior court clerk will, if requested by the defendant appearing without counsel, supply a notice of appeal form and file it upon completion by the defendant; (5) of the right, if unable to pay the costs thereof, to have counsel appointed and portions of the trial record necessary for review of assigned errors transcribed at public expense for an appeal; and (6) of the time limits on the right to collateral attack imposed by RCW 10.73.090 and .100. These proceedings shall be made a part of the record.

rules governing PRPs, this court transferred the matter to the trial court for an evidentiary hearing. Sweet testified that he told his attorney he wanted to file an appeal and believed an appeal had been filed. Sweet, 90 Wn.2d at 284. But Sweet said that his attorney filed a notice of withdrawal without informing him about how to perfect an appeal pro se. Sweet, 90 Wn.2d at 284. Following the advice of a corrections officer, Sweet missed the appeal deadline. Sweet, 90 Wn.2d at 285. Sweet's attorney testified that he advised Sweet of the right to appeal prior to sentencing but did not recall what he told Sweet. Sweet, 90 Wn.2d at 285. The trial court entered findings that the defendant received adequate appeal information, that he did not instruct his lawyer to file an appeal, and that he did not reasonably rely on the corrections officer, and denied postconviction relief. Sweet, 90 Wn.2d at 285-86. Sweet sought review in the Supreme Court, arguing the court erroneously required him to demonstrate lack of waiver. Sweet, 90 Wn.2d at 286. The Supreme Court reversed and reinstated the appeal on the grounds that there is no presumption of waiver and the burden is on the State, not the defendant, to establish a knowing and intelligent waiver. Sweet, 90 Wn.2d at 286, 290.

In Kells, a juvenile signed a guilty plea, waiving his right to appeal the adjudication of guilt. Kells, 134 Wn.2d at 312. The court did not inform the juvenile that he had the right to appeal the order of declination. Kells, 134 Wn.2d at 312. Fifteen months after sentencing, the juvenile filed a notice of appeal. His attorney admitted he did not inform the juvenile of this right because "he had been unaware" of the relevant law at the time. Kells, 134 Wn.2d at 312. However, as soon as his attorney "discovered" the case establishing the right to appeal a declination order, the juvenile

filed a notice of appeal. Kells, 134 Wn.2d at 312. The Court of Appeals dismissed the appeal as untimely. The Supreme Court reversed and reinstated the appeal. Kells, 134 Wn.2d at 315. The court held that because the declination decision "is a necessary prerequisite to the criminal conviction of a juvenile," the State must demonstrate a voluntary, knowing, and intelligent waiver of the right to appeal. Kells, 134 Wn.2d at 314.

In State v. Tomal, 133 Wn.2d 985, 987, 948 P.2d 833 (1997), defense counsel timely filed a notice of appeal of the driving while intoxicated conviction but took no further action to pursue the appeal for more than four years. The State appealed denial of the motion to dismiss the appeal. Tomal, 133 Wn.2d at 987-88. The Washington State Supreme Court affirmed. The court held that a court may not dismiss a direct appeal for attorney inaction or error. Tomal, 133 Wn.2d at 990-91. The court makes clear that the decision to waive the right to appeal must be made knowingly by the defendant and not as the result of his attorney's negligence. "If the rules are violated by the defendant's attorney, the remedy lies in sanctioning the lawyer, not in dismissing the defendant's appeal." Tomal, 133 Wn.2d at 990. But the court notes that "[u]nder certain circumstances, inaction on the part of a defendant may be used by the State to prove the defendant waived the right to appeal. However, more than simply an attorney's inaction is required." Tomal, 133 Wn.2d at 990.

The circumstances here differ fundamentally from those in Sweet, Kells, and Tomal. In each of those cases, the court analyzed the presumption against waiver in light of specific factual statements demonstrating the defendant was unaware of the right to appeal, or analyzed counsel's deficient performance in advising the defendant

about or pursuing the right to appeal. See also State v. Smith, 134 Wn.2d 849, 853-54, 953 P.2d 810 (1988) (defense counsel expressed erroneous legal interpretation of plea statement on the record that was "at odds" with a valid waiver).

Unlike in Sweet, Kells, and Tomal, Cater does not assert that he was unaware of the limited right to appeal following a guilty plea or that if he had been aware of the limited right to appeal, he would have directed his attorney to file an appeal. Nor does Cater claim that his attorney misadvised him about the limited right to appeal following a guilty plea or that his attorney's performance was deficient in any manner. In fact, Cater has not provided a declaration to support the motion to enlarge time. His only comment regarding the 1979 plea in the record before us is his conclusory assertion in support of the order of indigency that the guilty plea was entered "in violation of my constitutional rights."

Instead, Cater contends that he was "affirmatively misinformed" about the right to appeal because the Statement of Defendant on Plea of Guilty informed him he was giving up the right to appeal "from any finding of guilty and the sentence on that finding of guilty." While we agree with Cater that the advisement was potentially misleading, under the circumstances, the mere existence of a potentially confusing advisement without a declaration from Cater or the attorney who represented him in 1979 does not merit an evidentiary hearing.

Further, although not controlling, the fact that Cater is attempting to appeal from a guilty plea is a significant consideration. In analyzing the circumstances where counsel has a constitutional duty to consult with the defendant about an appeal, the United States Supreme Court observed that a guilty plea was a "highly relevant factor in

this inquiry . . . , both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." Roe v. Flores-Ortega, 528 U.S. 470, 480, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). As our Supreme Court has noted, where, as here, a defendant completes a plea statement and "admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary." Smith, 134 Wn.2d at 852.

Here, the undisputed record establishes that in 1979, Cater was charged with a class A felony that carried a maximum term of life in prison. Cater entered into a plea agreement that resulted in a 90-day suspended sentence with limited conditions. For 34 years, Cater made no effort to challenge or collaterally attack the 1979 guilty plea even though the State used the 1979 conviction in the 1989 trial to rebut his defense and he acknowledged the 1979 conviction should be included in his offender score. Cater did not seek to appeal the 1979 conviction until 2013 when he faced the potential of a conviction as a persistent offender.

The unique circumstances, including the presumption of a voluntary plea, the exceptionally favorable plea agreement, the unexplained 34-year-delay in filing a notice of appeal, and Cater's complete failure to assert any facts suggesting he was unaware of his limited right to appeal, support the strong inference that he knowingly, intelligently,

and voluntarily waived his limited right to appeal following a guilty plea. We therefore deny Cater's motion to enlarge time to file a notice of appeal.

WE CONCUR: