# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of:<br><br>JAKE JOSEPH MUSGA,<br><br><br>Petitioner. | No. 46987-1-II<br><br><br>UNPUBLISHED OPINION |

MAXA, A.C.J. – In this personal restraint petition (PRP), Jake Musga seeks freedom from restraint imposed following his guilty pleas for first degree felony murder and first degree child rape. Musga argues that his two defense attorneys provided ineffective assistance by failing to (1) review various discovery documents with him, (2) conduct an adequate investigation of his case and the State's evidence against him, (3) adequately advise him regarding pleading guilty to first degree murder, and (4) inform him that when he pled guilty he also stipulated to aggravating factors that could be used to impose an exceptional sentence and that the trial court had authority to impose an exceptional sentence. In addition, Musga argues that we should reinstate his right to a direct appeal because the trial court failed to inform him of his right to appeal his exceptional sentence.

After an initial review of Musga's PRP, we entered an order remanding the petition to superior court for a reference hearing on the second, third, and fourth ineffective assistance of

counsel claims identified above.[1] We directed the superior court to enter all findings of fact necessary to address whether defense counsel's representation was deficient in one of the ways Musga asserted and, if the representation was deficient, whether Musga was prejudiced with regard to his decision to plead guilty and/or his sentencing.

The superior court conducted a reference hearing. Following the hearing, the superior court entered extensive findings of fact stating that Musga did not prove by a preponderance of the evidence that defense counsel was deficient in any of the three ways claimed or that any of the claimed deficiencies caused prejudice. Musga now argues that substantial evidence does not support the trial court's findings.

We hold that (1) Musga did not establish a prima facie case that he was prejudiced by his defense counsel's failure to provide him with discovery documents; (2) Musga did not establish that he received ineffective assistance of counsel because substantial evidence supports the superior court's findings that Musga failed to prove that defense counsel (a) inadequately investigated Musga's case, (b) did not adequately advise him regarding pleading guilty to first degree murder and (c) did not explain to him the consequences of pleading guilty with regard to an exceptional sentence; and (3) Musga did not demonstrate that his right to direct appeal should be reinstated.

Accordingly, we dismiss Musga's PRP.

---

[1] In our reference hearing order, we stated that Musga failed to demonstrate a prima facie case of prejudice regarding the first ineffective assistance of counsel claim and therefore that the superior court did not need to address it.

FACTS

*Musga's Arrest and Charging*

In March 2013, police responded to a 911 call related to the death of CC, a 2-year-old boy. Musga had been dating CC's mother, Laura Colley, and was alone watching CC that evening. An investigation produced evidence indicating that Musga anally raped CC with a foreign object and beat him, causing CC's death. Musga was arrested and charged with first degree felony murder and first degree child rape.

The charging information also included several aggravating circumstances. Relating to the felony murder charge, the information stated that Musga knew or should have known that CC was particularly vulnerable or incapable of resisting under RCW 9.94A.535(3)(b), that Musga's conduct manifested deliberate cruelty under RCW 9.94A.535(3)(a), and that CC's injuries substantially exceeded the level of harm necessary to satisfy the offense's elements under RCW 9.94A.535(3)(y). Relating to the rape charge, the information included aggravators for deliberate cruelty and CC's vulnerability.

Musga's parents retained attorneys Keith Hall and Richard Warner to represent Musga and to provide all services reasonably necessary to his defense, including "pre-charge investigation and representation from arraignment through trial or other resolution upon payment for those services." PRP App. D ¶ 1.

*Musga's Guilty Plea and Sentencing*

On August 13, 2013, the State communicated a plea offer to Musga's attorneys that would allow Musga to plead guilty as charged. The State indicated that if Musga declined the offer, it would amend his charge to first degree murder with aggravating circumstances, for

which the sentence would be either be death or life imprisonment without the possibility of release or parole. The offer expired on August 30. The State informed Musga's attorneys that it would not accept an *Alford*[2] plea and would instead require Musga to submit a factual statement of guilt. Musga told his attorneys on August 29 that he wanted to accept the offer.

Musga's guilty plea was expressed in two documents titled Statement of Defendant on Plea of Guilty, one for each count. Musga reviewed these statements with Warner and Hall, with Warner reading the applicable paragraphs out loud to Musga.

The guilty plea statements provided that Musga would plead guilty to murder and child rape. The statements did not expressly state that any aggravating factors applied, but Musga did plead guilty to the counts as charged in the information. And paragraph 6(g) of both statements, concerning the State's sentencing recommendation, stated "Open recommendation – State seeking exceptional." PRP App. B at 4, App. C at 5. Paragraph 6(h) of each document also stated that the trial court had the authority to impose an exceptional sentence under certain listed circumstances.

Paragraph 11 of each statement required Musga to complete a written factual account of the charged crimes. Warner wrote in the language before reviewing the statements with Musga. The account in both statements admitted to the factual basis for each charge. The accounts also included language to support the charged aggravating factors, stating that Musga's actions were deliberately cruel, that CC could not resist because of his age, and for the murder charge that CC's injuries substantially exceeded the bodily harm necessary to satisfy the elements of the

---

[2] *N. Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

offense. After reviewing them, Musga initialed both accounts and signed both statements. He then entered his guilty plea in a hearing before the superior court.

At sentencing, the superior court noted that Musga had stipulated that there were aggravating circumstances justifying a departure from the standard sentence ranges of 261 to 347 months for felony murder and 111 months to life for first degree child rape. Musga requested a 300 month sentence; the State recommended a sentence of 720 months. The court sentenced Musga to concurrent exceptional sentences of 608 months for first degree felony murder and 258 months to life for first degree child rape.

*Reference Hearing and Findings of Fact*

Musga did not directly appeal his sentence, but later filed this PRP. After an initial review, we determined that Musga had established a prima facie showing that his attorneys provided inadequate assistance of counsel on several issues. We then remanded for the superior court to conduct a reference hearing.

The superior court conducted a lengthy reference hearing during the period between October 12 and December 7, 2016. Following the hearing, the superior court entered extensive findings of fact. The court found:

> 1. "[Musga] failed to prove by a preponderance of the evidence that trial counsel inadequately investigated his case and the State's evidence against him under the specific circumstances of his case." Clerk's Papers (CP) at 35.
>
> 2. "[Musga] failed to prove trial counsel failed to adequately advise him regarding pleading to first degree murder." CP at 42.
>
> 3. "Credible evidence adduced through Mr. Warner, Mr. Hall, the plea documents, and plea hearing establish Petitioner was adequately informed of the consequences of his pleas and that the facts admitted in his pleas empowered the trial court to impose an exceptional sentence." CP at 47.

The court also found that Musga failed to prove prejudice from any of the three ineffective assistance of counsel claims.

We now review Musga's PRP, as supplemented by the superior court's findings of fact.

ANALYSIS

A.    LEGAL PRINCIPLES

1.    PRPs and Ineffective Assistance of Counsel

To be entitled to collateral relief, a petitioner must establish either that (1) he was actually and substantially prejudiced by a constitutional error or (2) there was a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). In the typical case, the petitioner must make either showing by a preponderance of the evidence. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

PRPs involving ineffective assistance of counsel involve a slightly different standard. Ineffective assistance of counsel is a constitutional error, arising from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Id.* at 32-33. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 33. A petitioner alleging ineffective assistance of counsel must overcome a strong presumption that counsel's performance was reasonable. *Id.* Prejudice

6

occurs when there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Id.* at 34.

The reasonable probability standard for prejudice in an ineffective assistance of counsel claim is not precisely the same as the actual and substantial prejudice standard in a PRP. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 842, 280 P.3d 1102 (2012). However, the Supreme Court has held that a petitioner who presents a successful ineffective assistance of counsel claim necessarily establishes actual and substantial prejudice for purposes of collateral relief. *Id.* at 846-47.

2. PRP Mechanics

We have three options when reviewing a PRP: (1) dismiss the petition, (2) grant the petition, or (3) transfer the petition to the trial court for either a full determination on the merits or a reference hearing. *Yates*, 177 Wn.2d at 17. The threshold question for an alleged constitutional violation is whether the petitioner has made a prima facie case that a violation occurred and that it resulted in actual prejudice. *Id.* at 17-18. If a petitioner fails to make a prima facie showing of actual prejudice, we will dismiss the claim. *Id.* at 17. If the petitioner establishes that a constitutional violation and actual prejudice occurred, we will grant the petition. *Id.* at 18. If a petitioner makes a prima facie showing but we cannot determine the petition's merits on the record, we will remand for a reference hearing. *Id.*

To make a prima facie showing, the petitioner must present the evidence that is available to support the factual allegations underlying the claim of unlawful constraint. *Id.* A petition must state with particularity facts that, if proven, would entitle the petitioner to relief – bald assertions and conclusory allegations are not enough. *In re Pers. Restraint of Caldellis*, 187

Wn.2d 127, 146, 385 P.3d 135 (2016). If the petitioner's allegations are based on matters outside the existing record, he must demonstrate that he has competent, admissible evidence supporting the allegations. *Yates*, 177 Wn.2d at 18. If the evidence is based on knowledge in the possession of others, the petitioner must present their affidavits, with admissible statements, or other corroborative evidence. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). Factual allegations must be based on more than speculation, conjecture, or inadmissible hearsay. *Id.* at 489.

3.    Review of Reference Hearing Findings

In a reference hearing, the petitioner has the burden to prove a constitutional error and actual prejudice by a preponderance of the evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 679, 101 P.3d 1 (2004). A superior court's factual findings made after conducting a reference hearing will stand if they are supported by substantial evidence. *In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 488, 276 P.3d 286 (2012). Substantial evidence exists when the record contains a sufficient quantity of evidence to persuade a fair-minded, rational person that the finding is true. *Davis*, 152 Wn.2d at 679-80. Unchallenged findings are verities on appeal. *Id.* at 679.

A trial court's conclusions regarding witness credibility cannot be reviewed on appeal, even if the evidence is subject to other reasonable interpretations. *Id.* at 680.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Musga argues that his defense counsel provided ineffective assistance of counsel because his two defense attorneys failed to (1) review various discovery documents with him, (2) conduct an adequate investigation of his case and the State's evidence against him, (3) adequately advise

him regarding pleading guilty to first degree murder, and (4) inform him that when he pleaded guilty he also stipulated to aggravating factors that could be used to impose an exceptional upward sentence on both charges and that the trial court therefore had authority to impose an exceptional upward sentence. Musga argues that because of these alleged deficiencies, we must allow him to withdraw his guilty plea or remand his case for resentencing. We hold that Musga has failed to demonstrate that his defense counsel provided ineffective assistance in any of these areas.

1. Failure to Discuss Discovery Documents

Musga argues that his defense counsel provided ineffective assistance of counsel by failing to review certain discovery documents with him. We hold that Musga has not made a prima facie showing on this issue.

Musga submitted only his own declaration as evidence that his defense counsel failed to show him relevant case discovery. Musga's declaration states that his attorneys showed him CC's autopsy photographs, the 911 call transcript, and Laura Colley's Facebook friends. The declaration states that Musga's attorneys failed to provide him with the police reports, witness statements, or autopsy reports on the child victim. Musga states that had he been able to review the discovery, he could have provided ideas to his attorney for investigations to assist with his case.

Even if we assume without deciding that the conduct of Musga's attorneys was deficient, we hold that Musga has failed to demonstrate prejudice on this ground. Although Musga argues that he could have assisted his attorneys' investigation, he does not demonstrate or even argue

9

that the outcome of his case would have been different. *See Grier*, 171 Wn.2d at 34.

Accordingly, we hold that Musga is not entitled to relief on this basis.

    2.    Failure to Conduct an Adequate Investigation

Musga argues that his defense counsel provided ineffective assistance by failing to

conduct an adequate investigation into his case and the State's evidence against him.

Specifically, Musga alleges three deficiencies, arguing that his attorneys should have (1)

consulted with a medical expert to evaluate CC's medical reports and autopsy reports to

determine whether CC suffered injuries before March 29; (2) interviewed CC's mother and

grandmother, as well as other members of the victim's extended family, to investigate when

CC's bruising occurred; and (3) interviewed other key witnesses, including first responders, the

medical examiner, key police officers, on-scene forensic personnel, interviewing officers, scene

residents, a resident who was present in Musga's lobby, and other medical personnel, to further

test the State's evidence. Musga argues that this deficient investigation prevented defense

counsel from advising him regarding his decision to plead guilty, such that he entered a guilty

plea that was not knowing, intelligent, and voluntary. We disagree.

    a.    Legal Principles

A defense attorney's failure to investigate, when combined with other deficiencies, can

amount to ineffective assistance of counsel. *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956

(2010). Counsel has a duty to conduct a reasonable investigation under prevailing professional

norms. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 252, 172 P.3d 335 (2007). This duty

includes making reasonable investigations or to making a reasonable decision rendering

particular investigations unnecessary. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 355, 325

P.3d 142 (2014). An investigation must allow counsel to make informed decisions about representing the defendant, for example by investigating reasonable lines of defense. *Elmore*, 162 Wn.2d at 253. However, "[t]he degree and extent of investigation required will vary depending upon the issues and facts of each case." *A.N.J.*, 168 Wn.2d at 111. "In any ineffectiveness claim, a particular decision not to investigate must be directly assessed for reasonableness, giving great deference to counsel's judgments." *Elmore*, 162 Wn.2d at 252.

The obligation to conduct a reasonable investigation relates to trial counsel's obligation to inform his or her client. Counsel has a duty to assist a defendant in evaluating a plea offer. *A.N.J.*, 168 Wn.2d at 111. This duty includes assisting the defendant in making an informed decision about whether to plead guilty or to proceed to trial. *Id.* "[A]t the very least, counsel must reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty." *Id.* at 111-12.

Whether counsel's failure to investigate prejudiced the petitioner depends on the likelihood that the evidence would have led counsel to change his plea recommendation. *In re Pers. Restraint of Clements*, 125 Wn. App. 634, 646, 106 P.3d 244 (2005). That assessment depends on whether the evidence likely would have changed the outcome of a trial. *Id.* A bare assertion that the petitioner would not have pleaded guilty but for the alleged deficiency is insufficient. *Elmore*, 162 Wn.2d at 254.

b. Superior Court Finding of Adequate Investigation

Here, the superior court entered a finding of fact that Musga "failed to prove by a preponderance of the evidence that trial counsel inadequately investigated his case and the

11

State's evidence against him under the specific circumstances of his case." CP at 35. The superior court specifically noted that the relevant circumstances included the timing of the State's offer early in the investigation period and the State's notice that it planned to amend Musga's charges if he declined the offer. If substantial evidence supports the court's finding, Musga's ineffective assistance of counsel claim based on an inadequate investigation necessarily fails.

The superior court based its finding on a lengthy list of investigatory activities that it found Musga's attorneys took before Musga entered his guilty plea. We review whether these activities occurred for substantial evidence. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). But the ultimate question of whether those activities constitute ineffective assistance is a mixed question of law and fact that we decide de novo. *Id.* at 873-74.

The superior court made several findings that Musga does not challenge. These include findings that Musga's attorneys (1) filed a discovery demand and persistently followed up on that demand; (2) obtained records of CC's pre-incident medical treatment; (3) gathered information about Musga from Musga himself and from his mother and followed up on that information by locating records from his prior drug treatment for the purpose of evaluating a mental health defense; (4) independently contacted the state medical examiner's office to obtain an autopsy report for CC, intending to provide their own examiner with additional information that might inform potential defenses; (5) investigated the initial 911 caller and determined that he knew CC's mother based on social media connections; and (6) retained a private investigator, who prepared a timeline of events material to the State's case.

For a number of the court's other findings, it is not entirely clear what Musga contests and what he accepts. It appears that Musga does not contest that his attorneys (1) discussed with a medical expert the expert's conclusion about when CC's injuries occurred; (2) identified that Musga, while detained, had talked with another inmate and divulged information relevant to his case that could be potentially damaging and discussed this with Musga; (3) reviewed Musga's case and relevant evidence with him for approximately 30 hours; and (4) delayed interviewing any witnesses in order to collect as much evidence as possible before beginning the interview process, resulting in no witness interviews occurring before Musga's plea. We therefore treat these findings as verities.

Musga expressly contests three of the superior court's findings. First, the superior court found that Musga's attorneys reviewed and discussed with him the State's charging documents before entering a plea. Musga argues that his trial counsel did not have the charging documents available at his plea and did not explain that he was pleading guilty to aggravating factors or the effect they would have on his sentence. However, Warner testified that he reviewed the State's charging information with Musga on at least two occasions – one occurred when Warner first met Musga, the other when they discussed the plea bargain. Warner specifically testified that he distinguished the base charge and aggravating factors, and noted how the alleged aggravating factors would allow the court to impose an exceptional sentence. We hold that substantial evidence supports the superior court's finding.

Second, the superior court found that Musga's attorneys had informed him of the State's evidence against him and that they went over the substance of that evidence together. Musga argues, without citation to the record, that his attorneys did not review "all or even most of the

discovery" with him. Suppl. Br. of Pet'r at 73. But Warner testified that he reviewed with Musga the State's evidence, which included the crime scene photographs and the nature of CC's injuries. Warner testified that he and Hall shared with Musga as much discovery as Musga was comfortable with, omitting some photographs that Musga indicated he did not want to see. We hold that substantial evidence supports the superior court's finding.

Third, the superior court found that the evidence placed Musga alone with CC when the child's injuries occurred. The court found that this evidence directed the investigation conducted by Musga's attorneys away from interviewing witnesses and towards reviewing medical evidence. Musga disagrees with this finding, but he makes only an unsupported statement that it is "simply incorrect." Suppl. Br. of Pet'r at 72. This statement is insufficient. *See In re Estates of Palmer*, 145 Wn. App. 249, 265, 187 P.3d 758 (2008) (requiring record support for factual statements). In any event, in multiple conversations – both to police who arrived after CC's injuries occurred and in an interview at the police station – Musga provided a timeline of his activities with CC from when CC's mother left until when the police arrived. Musga stated at that time that no one else had been with him and CC when CC's injuries occurred. We hold that substantial evidence supports the superior court's finding.

        c.    Ineffective Assistance Analysis

To demonstrate that his attorneys' investigation was constitutionally ineffective, Musga must show that the investigation was unreasonable under the circumstances. *Elmore*, 162 Wn.2d at 252.

The superior court found that Musga's attorneys completed a significant number of investigatory tasks in the period leading up to the State's offer. His attorneys collected a

substantial amount of discovery and persistently followed up throughout the discovery process, they retained a medical examiner and private investigator, they identified potential defenses, and they spent significant time reviewing Musga's case with him. The court further found that Musga's attorneys focused on certain aspects of the case that they thought would yield the best results, specifically by targeting medical evidence instead of conducting interviews.

Musga argues that his attorneys' failure to conduct interviews prevented them from understanding his case and providing adequate assistance. But he does not explain how, under the circumstances, their decision to prioritize certain elements over others was deficient.

Warner testified that they did not want to begin interviewing witnesses until they compiled evidence and understood the case as fully as possible. Warner testified that this was a strategic decision that would allow them to ask interview questions with more contextual understanding as well as provide them with background that they could use to impeach or corroborate answers. Having an adequate background understanding was especially important because Warner believed he would have only one opportunity to interview each witness.

The superior court found that "[c]ounsel credibly stated they were waiting to conduct interviews until they had as much of the available information as possible to inform the interviews in case they were not permitted multiple interviews before trial. That approach was not proved deficient." CP at 39. The trial court also found that Musga had not proved that the failure to conduct witness interviews was deficient under the circumstances.

In addition, it is uncontroverted that the State's plea offer, coupled with a quick deadline and a threat to amend Musga's charges, cut short any further investigation. Based on their shortened timeframe, Musga's attorneys made a strategic decision about where to focus their

time. The superior court found that "[t]he strategy to postpone interviews was not made deficient by the timing and deadline of the plea offer." CP at 39.

Warner articulated clear reasons for delaying interviews and focusing instead on other aspects of the investigation. Defense counsel's strategic, judgment-based decisions in that regard are entitled to a strong presumption of validity. *Elmore*, 162 Wn.2d at 252. Further, the superior court's findings show that Warner and Hall had already begun compiling a case – gathering information, identifying potential defenses, and retaining experts – before learning of the State's plea offer. That they did not have the opportunity to conduct any interviews does not mean their investigation was inadequate. We therefore hold that substantial evidence supports the superior court's finding that defense counsel did not deficiently investigate Musga's case.

Because the superior court's reference hearing findings are supported by substantial evidence, we hold that Musga's attorneys did not provide ineffective assistance regarding their investigation of Musga's case.

3. Failure to Adequately Advise Regarding Guilty Plea

Musga argues that his defense counsel provided ineffective assistance by not substantially assisting him in his decision to plead guilty. Musga specifically argues that his attorneys did not review discovery with him, spent insufficient time reviewing the case with him, placed undue pressure on him by informing him that if he did not plead guilty the State would amend his charge to aggravated murder and possibly seek the death penalty, and failed to advise him that the State's ability to prove Musga committed aggravated murder was weak at best. We disagree.

a. Legal Principles

Due process requires that a guilty plea be knowing, voluntary, and intelligent. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004). A guilty plea is involuntary and invalid if the record shows that the defendant was coerced into accepting it. *State v. Williams*, 117 Wn. App. 390, 398, 71 P.3d 686 (2003).

The right to effective assistance of counsel applies in the plea bargaining context. *State v. Estes*, No. 93143-7, slip op. at 15 (Wash. June 8, 2017), http://www.courts.wa.gov/opinions/pdf/931437.pdf. Effective assistance includes assisting the defendant in making an informed decision to accept or reject a plea offer. *Id.* Counsel therefore must communicate plea offers, discuss plea negotiations, and review the strengths and weaknesses of the defendant's case. *State v. Edwards*, 171 Wn. App. 379, 394, 294 P.3d 708 (2012). This process is intended to inform the defendant of what to expect and allow him to make an informed decision on whether to plead guilty. *Id.*

To demonstrate ineffective assistance, the defendant must therefore show that counsel failed to substantially assist him in deciding whether to plead guilty. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 705-06, 327 P.3d 660 (2014). He must also show that, but for counsel's failure to properly advise him, he would not have pleaded guilty. *Id.*

b. Superior Court Finding of Adequate Advice

The superior court entered a finding of fact that Musga "failed to prove trial counsel failed to adequately advise him regarding pleading guilty to first degree murder." CP at 42. If substantial evidence supports the court's finding, Musga's ineffective assistance of counsel claim based on inadequate advice regarding pleading guilty necessarily fails.

The superior court based its finding both on the testimony of Musga's attorneys and on Musga's own representations at his plea hearing. The court found that defense counsel provided substantial assistance and the information Musga needed to make an informed plea decision in three ways.

First, the court found that defense counsel explained the charges, aggravating factors, and the elements the State had to prove to convict Musga. Warner testified that he reviewed the State's charging information with Musga on at least two occasions. When Warner first met Musga, their review included going over the State's charging document. Warner distinguished the base charge and aggravating factors, noting how the aggravators would allow the court to impose an exceptional sentence. The second occasion came when they reviewed the plea offer, at which point Warner again explained to Musga the difference between the base offense and aggravating factors. Warner specifically stated that even though the charges were associated with a standard range, an exceptional sentence could allow the court to impose a sentence above that range. We hold that substantial evidence supports the superior court's finding.

Second, the court found that defense counsel explained the evidence against Musga and the strength of his case. We discussed above what Musga's attorneys shared with him about the strength of his case. Warner testified that he reviewed with Musga as much discovery as Musga was comfortable with. This review included the State's evidence, which included the crime scene photographs and the nature of CC's injuries. Further, they discussed statements that Musga had made to another inmate about his previous interactions with CC. We hold that substantial evidence supports the superior court's finding.

Third, the court found that defense counsel explained the plea documents and the impact of his plea. Warner testified that he reviewed with Musga the details of Musga's plea documents and the effect a plea would have. At their initial meeting, Warner told Musga what the State had to prove and explained that the State's burden was to prove each element beyond a reasonable doubt. They also discussed that the case could be resolved through a trial or by a plea. When Musga decided to plead guilty, Warner testified that he went through with Musga each applicable paragraph of the plea statements, including Musga's rights and the consequences of Musga's plea. Part of those statements was a factual account, which Warner explained included language that would allow the court to impose an exceptional sentence. Warner also told Musga that the plea could result in an exceptional upward sentence. We hold that substantial evidence supports the superior court's finding.

Warner's testimony provides substantial evidence to support a finding that he and Hall adequately advised Musga about pleading guilty. Further supporting the superior court's conclusion, Musga confirmed at his plea hearing that he reviewed the plea with his attorneys and that he understood the effect it would have. The court concluded that Warner's testimony, combined with Musga's acknowledgement of his understanding, credibly established that Musga understood the impact of his guilty plea.

The superior court also found that Musga's reference hearing testimony and arguments were not credible. Musga testified that he lacked sufficient time to consider the State's plea offer, that he did not understand his plea statements, that his attorneys failed to negotiate to obtain a better plea deal, and that he felt coerced into pleading guilty. In several instances, Musga's testimony directly conflicted with Warner's. For example, Musga testified that he did

not receive any indication of a plea offer until August 29, one day before the offer expired. The superior court expressly discounted as not credible this testimony and Musga's testimony that he did not understand his plea statement. We cannot review and must accept the superior court's conclusion on Musga's credibility. *Davis*, 152 Wn.2d at 680.

The superior court similarly found that Musga's argument that he was coerced into pleading guilty was not credible. This finding is supported by substantial evidence, primarily through testimony by Musga's attorneys and corroborated by Musga's mother. Warner stated that it was possible the State could successfully amend Musga's charges, but he testified that he did not see any evidence of premeditation, an element of aggravated murder. Further, Hall testified that he did not believe the State would pursue the death penalty, which he would have relayed to Musga. Testimony at the reference hearing showed that Warner and Hall told Musga that if the State amended Musga's charges a death sentence was a possible but unlikely outcome.

### c.   Ineffective Assistance Analysis

To demonstrate that he received ineffective assistance, Musga must show that his attorneys failed to actually and substantially assist him when deciding whether to plead guilty. *Edwards*, 171 Wn. App. at 394. An attorney substantially assists his client by empowering the client to make an informed decision. *Id.*

The superior court found that Musga's attorneys provided sufficient advice to Musga. This advice included informing Musga of the charged offenses and aggravating factors, reviewing with Musga the strength of his case, and walking Musga through the effect of a guilty plea. These findings are supported by substantial evidence and show that Musga's attorneys provided effective assistance.

20

Because the superior court's reference hearing findings are supported by substantial evidence, we hold that Musga's attorneys substantially assisted him in his decision to plead guilty and therefore did not provide ineffective assistance.

4.  Failure to Explain Stipulation to Aggravating Factors

Musga argues that his guilty plea was involuntary because his defense counsel failed to explain to him the plea's direct consequences. Specifically, he argues that he was not informed that his guilty plea included stipulated facts that would allow the superior court to impose an exceptional sentence above the standard range.[3]  We disagree.

a.  Legal Principles

As we addressed above, a defendant receives ineffective assistance when his counsel fails to assist him in deciding whether to plead guilty. *Estes*, No. 93143-7, slip op. at 15. The attorney's obligation to substantially assist includes a requirement that, before the defendant accepts a plea, the attorney inform him of the plea's direct consequences. *A.N.J.*, 168 Wn.2d at 113. One direct consequence is the maximum sentence to which a defendant will be exposed. *State v. Knotek*, 136 Wn. App. 412, 423, 149 P.3d 676 (2006). A plea based on misinformation of sentencing consequences is not entered knowingly and is invalid. *Id.* The petitioner must show that, but for counsel's failure, he would not have pleaded guilty. *Cross*, 180 Wn.2d at 705-06.

---

[3] Musga's PRP vaguely suggests that he did not stipulate to facts supporting the aggravating factors. However, because Musga presents no argument on this issue, we do not consider it.

### b. Superior Court Finding Regarding Plea Consequences

The superior court entered a finding of fact that Musga was "adequately informed of the consequences of his pleas and that the facts admitted in his pleas empowered the trial court to impose an exceptional sentence." CP at 47. If substantial evidence supports the court's finding, Musga's ineffective assistance of counsel claim based on an inadequate information regarding plea consequences necessarily fails.

Musga's supplemental brief does not have a section heading for this question and he does not expressly challenge this finding, which would typically result in it becoming a verity on appeal. *Davis*, 152 Wn.2d at 679. However, the last few pages of the brief seem to address this issue. Because he makes a vague argument that he lacked an adequate understanding of his plea's consequences, and because he challenges the superior court's findings on whether he was adequately advised about his plea, we will consider whether the record supports the superior court's findings.

The superior court made two findings relevant to whether Musga received sufficient information from his defense attorneys. First, the court found that Musga's attorneys informed him of the aggravating factors filed by the State. Warner testified that he reviewed the State's charging information with Musga at their first meeting. The information itself distinguished the charged crimes from the alleged aggravating factors. As discussed above, Warner testified that on multiple occasions he reviewed with Musga the difference between the charged base offenses and the aggravating factors and how those factors would allow the court to impose an exceptional sentence above the standard range. We hold that substantial evidence supports the superior court's finding.

Second, the court found that Musga's attorneys informed him that by acknowledging the facts of the crimes as listed in paragraph 11 of the plea statements, he would be admitting to facts sufficient for the court to impose an exceptional sentence. At the reference hearing, Warner testified that he explained to Musga that the factual account included language that would allow the court to impose an exceptional sentence:

> I believe I said here are the facts that the judge could rely upon if the court were inclined to impose an exceptional sentence. The State is going to ask for an exceptional sentence. We are going to ask for a standard range sentence, but the decision will ultimately be the court's.

Report of Proceedings (RP) at 292. Warner's testimony matches an interrogatory answer he sent to the State before the reference hearing, which stated that Warner told Musga that his admission of what happened, in itself, would be sufficient for the State to seek an exceptional sentence.

In addition, two independent sources confirmed Musga's understanding. One was a presentencing investigator, who testified about his interview with Musga. The investigator testified that Musga had stated that "he [Musga] thought the sentence the prosecutor was proposing was long and it was exceptional." RP at 1507. Musga told him that the prosecutors "were asking for between about 40 and 60 years." RP at 1507. The second was Musga's psychiatric evaluation, which included a comment by Musga that "they're trying to give me 60 years." PRP Appendix dd. We hold that substantial evidence supports the superior court's finding.

### c. Ineffective Assistance Analysis

To demonstrate that he received ineffective assistance on this issue, Musga must demonstrate that his attorneys did not substantially assist him in that they did not inform him of the direct consequences of his plea. *A.N.J.*, 168 Wn.2d at 113.

The superior court found that Musga's attorneys informed him of the possibility of an exceptional sentence. Warner testified that he reviewed with Musga the State's charging information, which distinguished the base offense from any aggravating factors, on multiple occasions. Warner further testified that he explained how the aggravating factors could allow the superior court to impose an exceptional upward sentence when reviewing both the charging information and Musga's plea statement. Finally, Warner testified that he told Musga that the plea statement's factual account admitted to facts that satisfied the aggravating factors. This testimony establishes that Musga knew the contents of his plea and the direct consequences of that plea.

Further, Musga confirmed that he understood the consequences of his plea to two third parties. During his pre-sentencing interview and in a psychological evaluation, Musga stated that he thought the State would ask for a sentence far above the standard range.

Because the superior court's reference hearing findings are supported by substantial evidence, we hold that Musga's attorneys did not provide ineffective assistance by failing to inform him of the direct consequences of his plea.

5.    Remaining Ineffective Assistance Arguments

In one sentence in his PRP, Musga argues that his defense counsel's performance was deficient because they failed to prepare Musga for the mandatory presentence interview, required Musga to undergo a psychological examination without notice or explanation, shared the unfavorable results of the psychological examination with the sentencing court, and failed to provide Musga with an opportunity to read the presentence report prior to sentencing. However,

24

Musga presents no additional argument or citation to authority on these claims. Therefore, we do not address these claims.

C.      FAILURE TO INFORM OF RIGHT TO DIRECT APPEAL

Musga argues that we should reinstate his right to a direct appeal because the superior court failed to advise him of his right to appeal his exceptional sentence. The State argues that Musga was properly advised. We agree with the State.

Article I, section 22 of the Washington Constitution guarantees criminal defendants the right to appeal. *State v. Cater*, 186 Wn. App. 384, 392, 345 P.3d 843 (2015). It is the State's burden to demonstrate that the defendant understood his right to appeal and chose not to exercise it. *Id.* The State must make an affirmative showing that the defendant understood and chose not to exercise his right to appeal. *Id.* Circumstances must reasonably allow for an inference that the defendant knowingly relinquished his right to appeal. *Id.*

Defendants who plead guilty retain a limited right to appeal certain collateral questions. *Id.* Defendants who plead guilty also retain the right to appeal the imposition of an exceptional sentence. *See* RCW 9.94A.585(2).

Here, evidence produced by the State establishes that Musga knowingly relinquished his right to a direct appeal. On November 21, 2013, Musga, his attorney, and the superior court signed a document titled, "Advice of Right to Appeal." Resp't App. Z. This document informed Musga that he had "a right to appeal any sentence that is outside the standard sentence range" and "[u]nless a notice of appeal is filed with the clerk of the court within thirty (30) days from the entry of judgment . . . you have irrevocably waived your right of appeal." Resp't App. Z. Musga's signature demonstrates his awareness of his limited right to appeal.

No. 46987-1-II

By failing to file an appeal within 30 days after the superior court entered judgment, Musga waived his right to directly appeal his exceptional sentence. Accordingly, we reject this argument.

CONCLUSION

We dismiss Musga's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
MELNICK, J.

_____
SUTTON, J.