# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 60387-0-II |
| MICHAEL DENNIS McMAHON, | UNPUBLISHED OPINION |
| Petitioner. | |

CHE, J. — Michael Dennis McMahon seeks relief from personal restraint imposed after he was convicted of three counts of first degree rape of a child, two counts of first degree child molestation, and one count of attempted second degree rape of a child. In this petition, McMahon argues that he received ineffective assistance of counsel from trial counsel's alleged failure to discuss a plea offer or inform McMahon of the risks and consequences of proceeding to trial. We deny McMahon's petition.

FACTS

I. BACKGROUND

In 2015, KM reported to police that McMahon, her stepfather, raped and molested her numerous times in the late 1990s and early 2000s. *State v. McMahon*, No. 56660-5-II, slip op. at 1 (Wash. Ct. App., Feb. 7, 2023) (unpublished) https://www.courts.wa.gov/opinions/pdf/D2%2056660-5-II%20Unpublished%20Opinion.pdf. In February 2018, the State charged McMahon with three counts of first degree rape of a child, three counts of first degree child molestation, and one count of attempted first degree rape of a child.

The case proceeded to trial in 2021. McMahon testified at trial, denying all of KM's allegations. The State proposed, and the court gave, the attempted second degree rape of a child offense as a lesser included offense jury instruction to attempted first degree rape of a child. A jury convicted McMahon of three counts of first degree rape of a child, two counts of first degree child molestation, and one count of attempted second degree rape of a child.[1] For each conviction, the jury entered special verdicts finding that McMahon abused a position of trust and that the crimes were part of an ongoing pattern of abuse. The jury also found that KM and McMahon were members of the same family or household.

At sentencing, McMahon made a statement maintaining that he was innocent. The trial court imposed determinate sentences for most of the convictions, as required by the law that applied when those crimes occurred. The controlling sentence was for the first degree rape of a child convictions: the trial court imposed sentences of 240 months for each of those convictions. The date range for the attempted second degree rape of a child was from 2001 to 2003, after the creation of the Indeterminate Sentencing Review Board (ISRB), so for that conviction, the trial court imposed an indeterminate sentence of 157.5 months to life.

McMahon appealed his convictions, and the State conceded an error in the seriousness level of McMahon's first degree rape of a child convictions. *McMahon*, No. 56660-5-II, slip op. at 10. This court remanded for resentencing with the correct seriousness level. *Id.*, slip op. at 10-11.

The trial court resentenced McMahon on January 12, 2024. With the corrected seriousness level, McMahon faced standard sentencing ranges of 210 to 280 months for the first

---

[1] The jury acquitted McMahon of one count of first degree child molestation.

degree rape of a child convictions, 149 to 198 months for the first degree child molestation convictions, and a minimum term of 157.5 months to 210 months and a maximum term of life for the attempted second degree rape of a child conviction.

At resentencing, McMahon again made a statement maintaining that he was innocent, as he had throughout all prior proceedings. The trial court imposed sentences of 210 months on each first degree rape of a child convictions, 198 months on both first degree child molestation convictions, and an indeterminate sentence of 210 months to life for the attempted second degree rape of a child conviction, and ordered that the sentences be served concurrently. PRP, Ex. A at 6-7, PDF at 51-52.

## II. PERSONAL RESTRAINT PETITION

### A. *McMahon's Declaration*

On January 7, 2025, McMahon filed this timely personal restraint petition (PRP). The petition included McMahon's declaration, which set forth numerous allegations about McMahon's trial counsel's failure to explain the risks of trial or consequences of conviction. Specifically, McMahon asserts that trial counsel never discussed the maximum sentence or standard sentencing range for the charges, and never explained aggravating factors, indeterminate sentencing, or community custody.

McMahon also claims that he learned about a plea offer extended by the State in the summer of 2018, and discussed the offer with counsel, only after the plea offer had expired on August 3. The State had issued the offer "in hopes that the Defendant will accept responsibility at the outset of the case." PRP, Ex. E, PDF at 93. The offer would have required McMahon to plead guilty to one count of attempted first degree child molestation, which had a standard range

3

of 38.25 to 51 months, among other terms, and allowed him to request a special sex offender

sentencing alternative (SSOSA). The State could oppose the SSOSA and argue for any sentence

within the standard range. If the court granted a SSOSA, McMahon would stipulate to a

suspended minimum sentence of 51 months; and as a condition of the suspended sentence,

McMahon would stipulate to serving 364 days in jail.

The plea offer inaccurately stated that the charges McMahon faced if he went to trial

were all subject to indeterminate sentences with maximum terms of life. And it incorrectly

stated that the standard sentencing ranges for the first degree rape of a child charges were all 240

to 318 months, reflecting the erroneous seriousness level that was corrected on appeal. The plea

offer also stated that if McMahon proceeded to trial, the State would seek an exceptional upward

sentence of greater than 318 months. Lastly, it prohibited McMahon from entering any guilty

plea statement that did not admit relevant conduct, unless the assigned prosecutor consented to

such a guilty plea statement.

McMahon asserts that trial counsel described the offer as "a 'year in jail' and 'some

classes'" but did not further explain SSOSA sentences. PRP, McMahon Decl. at 3, PDF at 38.

McMahon also submits that he sent an email to trial counsel in late 2020, stating he was

willing to plead guilty as long as he did not have "to do any jail or prison time." PRP, McMahon

Decl. at 4, PDF at 39. The email explained that McMahon was considering pleading guilty only

"[a]fter being persecuted for two years, and enduring a major surgery and its aftermath" as well

as the COVID-19 pandemic and 2020 presidential election. PRP, Ex. G, PDF at 106. McMahon

also said in the email that he was no longer concerned about the job implications of having a

felony on his record or the loss of his gun rights because he was permanently disabled due to his

4

health conditions. PRP, Ex. G, PDF at 106. But McMahon remained insistent that he "need[ed] to avoid Jail/Prison at ALL cost," both because he did not believe he would survive confinement, and because "my Social Security disability that my family lives on will be lost if I am incarcerated." PRP, Ex. G, PDF at 106.

In his declaration, McMahon states, "At the time I sent that email, however, I was simply not aware of what prison sentence I might expect to face if I was convicted at trial." PRP, McMahon Decl. at 4, PDF at 39. "If I knew the standard range sentence, my attitude about an acceptable consequence for pleading guilty would have been much different, and I would have been much more inclined to resolve my case through a negotiated plea bargain even if it involved a substantial jail or prison sentence." PRP, McMahon Decl. at 4, PDF at 39.

Paragraphs 20 and 21 of McMahon's declaration included extensive claims:

20. I acknowledge that during my trial, I testified and denied that I committed any of the charged offenses. That decision, however, was distinct from my history of and my experience managing risk. I have no doubt that I was prepared to engage in plea negotiations and plead guilty if I had been properly informed of the penalties of being convicted at trial. If the State's offer of pleading guilty to one count of Attempted Child Molestation in the First Degree was the best and final offer that the State was willing to make, I would have accepted that plea bargain.

21. The reasons that I did not plead guilty include the following:
    a. I did not know the maximum penalty for the offense, nor did I understand the sentencing range for those offenses.
    b. I was never informed of what indeterminate sentencing was or how it might affect me.
    c. I did not fully understand the terms of the plea bargain, other than the idea that it carried some amount of jail time, the loss of my rights, and sex offender registration.
    d. [Trial counsel] told me that the State's plea offer had already expired by the time we had any substantive communication about it.
    e. [Trial counsel] was constantly assuring me that I did not need to worry about the charges, and that I should have faith.

PRP, McMahon Decl. at 6-7, PDF at 41-42.

5

B.      *Trial Counsel's Declaration*

In response, the State submitted a declaration from McMahon's trial counsel.  To begin, trial counsel asserts that, "[w]ithout exception" it was his regular practice to convey all settlement offers and risks from trial.  Decl. of Couns. at 1-2.  Counsel states that he is "reasonably sure" he explained the maximum sentences to McMahon but admits that he may not have explained the standard sentencing ranges for each charge.  Decl. of Couns. at 2.  Counsel also contends that he told McMahon that he was charged with Class A felonies "that carried the potential of a maximum sentence of life in prison," and also discussed the impact of aggravating factors.  Decl. of Couns. at 5.

In particular, counsel states, "I am reasonably certain that I discussed with Mr. McMahon on multiple occasions that he faced a very long prison sentence if [he] proceeded to trial and was convicted of any, or some, of the charges."  Decl. of Couns. at 4.  "I may not have provided to him an exact number of months or years that he faced in confinement, but this was due to the numerosity of the charges, and the possibility of a split verdict."  Decl. of Couns. at 4.  "Our discussions, the seriousness of the charges, and the offer of settlement, which I shared with him, made clear that a conviction for some of the offenses for which he was charged would entail a significantly long prison sentence."  Decl. of Couns. at 4.  Trial counsel acknowledges that he did not discuss indeterminate sentencing with McMahon pretrial because that did not become an issue until midtrial, when the State proposed a lesser included jury instruction for the attempted first degree rape of a child charge.[2]

---

[2] This midtrial development was the subject of a postconviction motion to arrest judgment for the attempted second degree rape of a child conviction, where trial counsel argued that McMahon

Trial counsel also explains that he convinced the State to extend the summer 2018 plea offer deadline to the end of August, that he spoke with McMahon about the case and sent a copy of the settlement offer to McMahon in August before the extended deadline, and that McMahon knew about the extension.[3]  In other words, even if McMahon received the offer after the original expiration date, counsel had negotiated an extension that gave McMahon time to consider the offer after discussing it with counsel.

Counsel insists that he "would have pointed out that the 'year in jail' was only possible if [McMahon] received a SSOSA sentence," the probability of which was "very slim given that[] (1) the prosecutor and victim opposed Mr. McMahon receiving a SSOSA sentence; and (2) he was denying any illegal, sexual contact with the victim."  Decl. of Couns. at 3; App. A.  Trial counsel attaches a July 2018 letter where he told McMahon, "Enclosed is the prosecutor's offer to settle the case against you. . . .  Given our previous discussions, I assume you are not interested in settlement in this case and only want to proceed to trial.  If I am wrong about that, please let me know as soon as possible."  Decl. of Couns., App. A.  Trial counsel also attaches an August 16, 2018, letter again enclosing the plea offer.

Finally, trial counsel responded to McMahon's claims that he would have pleaded guilty if he were better informed:

> In response to ¶ 20 of Mr. McMahon's declaration: That Mr. McMahon—at any point prior to being convicted at trial—would have pleaded guilty pursuant to the offer of settlement is incompatible with his position throughout his case that he not

---

had no notice that he was subject to a possible indeterminate sentence.  The trial court denied the motion to arrest judgment at sentencing.

[3] Trial counsel sent the State's settlement offer twice to McMahon, but trial counsel did not know if McMahon received the first one sent in July 2018.

serve any time in jail or prison and with his position that he was totally innocent of any and all of the crimes charged.

In response to ¶ 21 of Mr. McMahon's declaration: I am reasonably sure that (1) Mr. McMahon had a copy of the settlement offer before the offer expired; (2) we had a substantive discussion regarding the terms of the settlement offer before it expired; and (3) the legal advice and counsel I provided regarding the settlement offer, and his case, was far more substantive and detailed than offering assurances to Mr. McMahon that he "did not need to worry" and that he "should have faith."

Decl. of Couns. at 5.

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

McMahon argues that he received ineffective assistance of counsel because he did not receive adequate communication about the plea offer (or inaccuracies therein) and was not properly advised about the consequences of trial or conviction. McMahon insists that he would have accepted the plea offer if he were adequately advised about the offer in contrast to the consequences of being convicted at trial.

The State responds that trial counsel did not perform deficiently because McMahon received the plea offer before it expired and the general terms were clear, including the total amount of prison time the State would be seeking if McMahon were convicted. The State concedes that the plea offer had inaccurate statements regarding "the seriousness level of the completed rape counts and whether McMahon would be subject to an indeterminate sentence on those same counts." Br. of Resp't at 11, n.3. The State also acknowledges that McMahon's trial counsel did not discuss indeterminate sentencing with McMahon. But the State emphasizes that McMahon was consistently unwilling to entertain any plea deal that required him to serve any time in confinement, and even a SSOSA sentence (which McMahon was unlikely to receive due

8

to maintaining his innocence) would have required close to a year in jail. Accordingly, the State contends that McMahon cannot demonstrate prejudice. We agree with the State.

A.    *Legal Principles*

To receive relief through a timely personal restraint petition, a petitioner alleging a constitutional error "'"must show by a preponderance of the evidence that the error has caused him actual prejudice.'" *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018) (quoting *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004)). "Dismissal is necessary where a petitioner fails to make a prima facie showing of actual prejudice for alleged constitutional errors." *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). "Mere '[b]ald assertions and conclusory allegations' are insufficient to justify a reference hearing." *Id*. at 18 (quoting *In re Pers. Restraint of Rice,* 118 Wn.2d 876, 886, 828 P.2d 1086 (1992)).

The Sixth Amendment to the United States Constitution and article I, section 22 to the Washington Constitution both guarantee criminal defendants the right to effective assistance of counsel. U.S. CONST. amend VI; WASH. CONST. art. I, § 22. This includes the right to have counsel assist the defendant in making an informed decision about whether or not to plead guilty. *State v. Drath*, 7 Wn. App. 2d 255, 267, 431 P.3d 1098 (2018).

In a PRP, as in a direct appeal, a petitioner alleging ineffective assistance of counsel must "show that counsel's performance was deficient and that the [petitioner] was prejudiced by the deficient performance." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). The failure to demonstrate either prong of the ineffective assistance of counsel test will end this court's inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).

"Courts strongly presume that counsel's representation was effective." *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012). To perform effectively, "[c]ounsel must, at a minimum, 'reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision as to whether or not to plead guilty.'" *State v. Estes*, 188 Wn.2d 450, 464, 395 P.3d 1045 (2017) (quoting *State v. A.N.J.*, 168 Wn.2d 91, 111-12, 225 P.3d 956 (2010)). "In the plea bargaining context, counsel must communicate actual offers, discuss tentative plea negotiations, and discuss the strengths and weaknesses of the defendant's case so that the defendant knows what to expect and can make an informed decision on whether to plead guilty." *State v. Edwards*, 171 Wn. App. 379, 394, 294 P.3d 708 (2012).

To establish prejudice, a petitioner "must 'prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Drath*, 7 Wn. App. 2d at 267 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). "Prejudice exists when there is 'a probability sufficient to undermine [the court's] confidence in the outcome.'" *State v. Bertrand*, 3 Wn.3d 116, 129, 546 P.3d 1020 (2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984)). In the context of plea negotiations, McMahon must show that, but for counsel's deficient performance, there is a reasonable probability that the plea offer would have been presented to the court, meaning "that [McMahon] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances." *Lafler v. Cooper*, 566 U.S. 156, 164, 132 S. Ct. 1376, 1385, 182 L. Ed. 2d 398 (2012); *see Drath*, 7 Wn. App. 2d at 267.

"In evaluating claimed prejudice, we engage in an objective, rational person inquiry, rather than a subjective analysis." *State v. Buckman*, 190 Wn.2d 51, 66, 409 P.3d 193 (2018). A petitioner's bare allegation that they would have chosen to plead differently if they had known all of the consequences of their decision is insufficient to establish prejudice. *Id.* at 62.

This court has held that an attorney rendered ineffective assistance by misinforming the defendant that the maximum sentence was 20 months lower than the correct maximum term. *Drath*, 7 Wn. App. 2d at 268. Because the defendant rejected four different plea offers, actively discussed the offers with her attorneys before rejecting them, and testified that she would have considered the final plea offer if she had known her true sentencing range, this court determined that counsel's deficient performance prejudiced the defendant. *Id*.

B.      *Analysis*

To the extent that McMahon claims that he was not notified of the plea offer until after the offer expired, the record contradicts McMahon's claim. McMahon's trial counsel's declaration attached copies of two letters, sent July 20, 2018, and August 16, 2018, each briefly discussing the attached plea offer. Trial counsel also provided correspondence showing that the State had agreed to extend the offer until the end of August 2018, and both McMahon and counsel attest that they discussed the offer during the month of August after McMahon received the State's offer from trial counsel. Thus, the record shows McMahon was notified of the plea offer before it expired.

The substance of the discussion about the plea offer remains in dispute. McMahon claims that he was not aware of the prison sentence that he would face if convicted. McMahon Decl. at 4. Trial counsel insists that, although he may not have specified the number of months

11

or years, he repeatedly told McMahon that "conviction for some of the offenses for which he was charged would entail a significantly long prison sentence." Decl. of Couns. at 4. Similarly, McMahon and counsel dispute whether counsel informed McMahon of the maximum sentences. Counsel admits that he did not "have a fulsome discussion" with McMahon about indeterminate sentencing because counsel did not believe that the State had filed a charge that could require indeterminate sentencing. Decl. of Couns. at 4.

Even assuming without deciding that counsel did not inform McMahon of the prison sentence he would face if convicted, McMahon must still demonstrate prejudice. Thus, the primary inquiry is whether there is a reasonable probability "that [McMahon] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances." *Lafler*, 566 U.S. at 164; *Drath*, 7 Wn. App. 2d at 267.

It is worth noting that the plea offer listed erroneous *higher* sentencing ranges for the charges. This is distinguishable from *Drath*, where the defendant was erroneously informed that the maximum term was 20 months lower than in actuality. 7 Wn. App. 2d at 268. Indeed, the erroneously high standard sentencing ranges in McMahon's plea offer should have given him an increased incentive to plead guilty based on that information.

Next, the indeterminate sentencing issue did not arise until nearly three years after the plea offer expired, when midtrial in July 2021, the State proposed a lesser included offense jury instruction for the attempted first degree rape of a child charge. Thus, counsel's lack of advice regarding indeterminate sentencing is irrelevant because the plea offer had long expired by the time that issue arose.

Overall, the record establishes that McMahon objected to pleading guilty for numerous reasons unconnected to the actual time served in confinement. He began considering pleading guilty in 2020 only after health conditions and a major surgery mitigated his concerns about having a felony record and losing his firearm rights. Even then, McMahon objected to any confinement because incarceration would cut off his Social Security benefits. Importantly, McMahon demonstrated this limited change of heart only in December 2020, well over two years after the State's plea offer expired.

Even accepting McMahon's version of the conversations with trial counsel, nothing in the record demonstrates that McMahon was ever willing to accept any plea offer that required incarceration. Although the plea offer allowed McMahon to request a SSOSA, which the prosecutor and victim opposed, a SSOSA would have required McMahon to stipulate to serving nearly a year in confinement, admit relevant conduct for his crime, lose his right to possess firearms, and register as a sex offender, among other things. These were all actions and consequences that McMahon strongly opposed until health concerns changed his mind in late 2020.

The record does not support McMahon's bald assertion that he would have accepted the terms of the 2018 plea offer if he had been properly informed of the consequences of conviction for the charges on which he went to trial. *Yates*, 177 Wn.2d at 18. Because the record does not establish a reasonable probability that McMahon would have accepted the plea offer, McMahon cannot establish prejudice. *Drath*, 7 Wn. App. 2d at 267. Accordingly, McMahon's claim of ineffective assistance of counsel fails.

13

No. 60387-0-II

## CONCLUSION

We deny McMahon's petition.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Lee, J.